CEGELSKI, Respondent, vs. CITY OF GREEN BAY, Appellant.

*March 7—April 11, 1939.*

*Thos. C. Dwyer* of Green Bay, for the appellant.

For the respondent there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan* and *Arthur Kaftan*.

FOWLER, J.  The case is before us on appeal from an order of the circuit court overruling a demurrer to the complaint for insufficiency of facts.  The complaint states that the plaintiff was injured when a toboggan on which he was riding ran into a snowdrift at the bottom of a toboggan slide.  The drift had remained for three or four days without removal. It appears that no charge was made for use of the toboggan slide.  It was located on the side of a hill outside the city limits.  The city through its employees smoothed the surface of the ground along the course of the slide, kept it covered with snow or ice and constructed a railing alongside to guide the toboggans for a part of its course.  The allegations of the complaint are sufficient to state a case of actionable negligence in favor of the plaintiff if the slide had been operated and maintained by a natural person or a corporation for gain or advantage.  But it is alleged that the slide is located in a park or playground maintained by the city for the amusement and benefit of the public.  The defendant claims that this allegation shows that the city was maintaining the slide in performance of a governmental function, and is therefore not liable although the slide was not maintained in a condition safe for the use made of it.  That an instrumentality so maintained by a municipality within its limits is not liable for injuries sustained in using it is the settled law of this state.  It has been so held of a bathing beach: *Bernstein v. Milwaukee,* 158 Wis. 576, 149 N. W. 382; *Gensch v. Milwaukee,* 179 Wis. 95, 190 N. W. 843; of a park and playground: *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579; of a bathing pool in a park: *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341; and of a street set aside by a municipality for use of children in sliding down hill: *Skiris v. Port Washington,* 223 Wis. 51,

269 N. W. 556; and so of a street so used by children when not set aside for such use by the municipality: *Herrick v. Luberts,* 230 Wis. 387, 284 N. W. 27.

The plaintiff contends that the rule above stated does not apply because the allegations of the complaint above stated show, (1) that the city was maintaining the slide in its proprietary as distinguished from its governmental capacity, and (2) that sec. 101.06, Stats., commonly referred to as the safe-place statute, applies to municipalities, and the slide is a structure within the meaning of this statute. It is true that if the city was functioning in a proprietary capacity under the allegations of the complaint, or if under the allegations of the complaint the safe-place statute applies to the situation involved, the city is liable.

(1) The argument under this head seems to be twofold, (a) that a city cannot operate in a governmental capacity outside its limits because it has no governmental authority except within its territorial limits, and (b) that where a city owns property outside its limits it necessarily owns it in its proprietary capacity.

(a) The claim of want of governmental capacity outside the city limits is grounded on the proposition that city ordinances have no extraterritorial effect. This is of course true. And it has been held that while a city may own and maintain a park outside of its limits, ordinances regulating the conduct of persons in parks have no application to such parks. A fine or penalty cannot be enforced against a person for acts violative of a city ordinance committed in a park maintained by a city outside the city limits, although had the act been committed in a park within the city the penalty imposed for the act could have been enforced. But it does not follow from this that a governmental function cannot be exercised by a city outside its territorial limits.

(b) It is true that where a city owns property outside the city, it necessarily owns the property in its proprietary ca-

pacity. But while it so holds the property it does not necessarily follow that it maintains or operates in a proprietary capacity. A city owns its public buildings situated within the city and it owns them in a proprietary capacity. But if it uses them only to carry on governmental functions therein it is exempt from liability for injuries sustained by persons while the city is performing such function therein, except as the safe-place statute may apply. If a city uses land outside its limits as a park it uses it in the performance of a governmental function just the same as it would be so using it if it lay within the city, and the same reason applies for holding the city not liable to persons injured therein that would apply if the park were within the city. Use in a proprietary capacity does not follow from mere ownership. If in using land inside city limits as a park a city is carrying on a governmental function, in so using land outside the city it is exercising a governmental function. The mere location of the land does not affect the nature of the function performed on it, any more than mere proprietorship affects the nature of the function performed in a city-owned building.

(2) If the city is liable under the safe-place statute, it must be upon the ground that the slide is (a) a public building, or (b) a place of employment within the meaning of the statute.

(a) That it is not a public building in the ordinary sense of the word is manifest. Sec. 101.01 (12), Stats., defines a public building as "any *structure* used . . . as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants." The safe-place statute, sec. 101.06, provides that "every employer and every owner of a place of employment or a public building . . . shall so construct, repair or maintain such place of employment or public building . . . as to render the same safe." The toboggan slide is on the side of a hill. The snowdrift which caused the injury was at the bottom of it. While the

safe-place statute applies to a municipally owned public building, the instant slide was in no sense a building or a structure. The slide followed the natural slope of the hill. The only allegation of the complaint having any relation to anything other than mere smoothing and keeping smooth and covered with ice or snow the surface of the ground and banking the sides of the course with snow is that the city "erected on said premises a wooden railing to guide the direction of the skis or toboggans" using the slide. It is also alleged that the snowdrift was in the portion of the hill where persons using the slide were guided by the railing above mentioned. If this railing were deemed a structure such as to constitute a public building, the railing is not alleged to be in any way unsafe or to have had any connection with the plaintiff's injuries. We consider that it cannot be regarded as within the purview of sec. 101.06, Stats.

(b) Nor can we view the place where the snowdrift was situated a place of employment. The term "place of employment" as the term is used in sec. 101.06, Stats., is defined in sec. 101.01 (1) as every place "where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is directly or indirectly, employed by another for direct or indirect gain or profit." The city is not operating the slide for gain or profit. Nor can maintaining the slide be considered as an "industry, trade or business." The idea of place of employment is further restricted by the definition of employment contained in sub. (2) of sec. 101.01, Stats., which provides that "the term 'employment' shall mean and include any trade, occupation or process of manufacture, or any method of carrying on such trade, occupation, or process of manufacture." These provisions clearly exclude the snowdrift as a place of employment. That it was not such is clearly ruled by the recent decisions of *Waldman*

*v. Young Men's Christian Asso.* 227 Wis. 43, 277 N. W. 632, and *Herrick v. Luberts, supra.*

As the above rules the case in favor of the defendant there is no need to consider other matters discussed in the briefs.

*By the Court.*—The order of the circuit court is reversed with direction to enter an order sustaining the demurrer.