LAWVER, Appellant, vs. JOINT DISTRICT No. 1, MOUNT
HOREB AND BLUE MOUNDS, Respondent.

*October 11—November 7, 1939.*

For the appellant there was a brief by *Hall, Baker & Hall* of Madison, and oral argument by *Paul Griffith* of Madison, and *William T. Terrill* of Dixon, Illinois.

For the respondent there was a brief by *M. A. Tollund* of Mount Horeb, attorney, and *Hill, Beckwith & Harrington* of Madison of counsel, and oral argument by *Mr. D. V. W. Beckwith* and *Mr. Tollund*.

MARTIN, J. It appears that appellant's son, Walter H. Wilson, was instantly killed on October 11, 1938, while upon the school grounds of defendant School District, by a falling portion of the flagpole located on the school grounds but apart from the school building. It is alleged that the defendant School District had erected and maintained said flagpole in a manner causing a condition of rust, decay, and destruction of the material from which it was constructed; that such decay and decomposition was caused by an accumulation of water, snow, and ice seeping into the joints and unions of said flagpole. It is further alleged that the maintenance of the flagpole in the condition in which it was maintained on and prior to the date in question, constituted a violation of sec. 101.06, Stats. 1937, commonly referred to as the "safe-place" statute. It is further alleged,—

"that the defendant is a joint school district, existing under and by virtue of the statute, located in Dane county, Wisconsin, and adjacent to the village of Mount Horeb in said county and state, and among other things, owns, operates, maintains, and controls a certain public school building, the

grounds, and equipment adjacent and incidental to said school building, including, among other things, a certain flagstaff and pole located upon the premises of said defendant, in front of the school building, perpendicular from the ground and a sidewalk area surrounding said pole, customarily used for the display thereon of the National flag; that said sidewalk area surrounding said flagstaff and pole is constructed of concrete, and said flagstaff and pole is set in and on said area in a concrete base; that said concrete area and said flagstaff or pole is located in front of said school building proper and adjacent to the sidewalks leading into the said school building.

"Plaintiff further alleges on information and belief that said flagstaff and pole and the concrete area surrounding the same is now and has been in the past used by the defendant school district and used by the public as a place of resort and assemblage for the purpose of holding and conducting patriotic services on holidays such as Memorial Day and Armistice. . . ."

"Plaintiff alleges that heretofore and on the 11th day of October, 1938, and in the evening of said date, the said Walter H. Wilson, deceased, was lawfully upon and a frequenter of the premises owned and maintained by the defendant herein, in that the deceased was upon said premises for pleasure, and for the purpose of waiting for certain persons then in the school building on said premises who were attending a social function, and for the further purpose of leisure and relaxation in the parks area, walks, etc., located on the grounds of said defendant, and adjacent to said flagpole, and upon the school grounds of said defendant in said county and state, adjacent to the village of Mount Horeb, and at, near, and in the vicinity of that certain flagpole and staff owned, maintained, and controlled by the defendant herein, located in, on, or near the public walks on said defendant's school grounds, when a portion of said defendant's flagpole and staff broke off and fell toward the ground, falling against and striking down the said Walter H. Wilson, deceased, and then and there, as the result of said blow and said striking by said flagstaff, the said Walter H. Wilson was instantly killed."

The appellant contends that the flagstaff or flagpole and its immediate environs constituted a "public building," as that

term is used in the "safe-place" statute. In this connection it should be noted that appellant does not contend that the premises in question constitutes a "place of employment" within the meaning of sec. 101.06, Stats. It is conceded that the flagstaff or pole was not physically located upon or attached to the school building. It is alleged in the complaint "that the flagpole and the area surrounding it have been used by the school distict and the public as a place of resort and assemblage for the purpose of holding and conducting patriotic services on holidays such as Memorial Day and Armistice Day," from which appellant argues that the flagpole and its immediate environs constituted a "public building" within the meaning of sec. 101.06, Stats. Sec. 101.06, Stats., reads:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

Sec. 101.01 (12), Stats., thus defines a public building:

"The term 'public building' as used in sections 101.01 to 101.29 shall mean and include any structure used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants."

Sec. 101.01 (13), Stats., provides:

"The term 'owner' shall mean and include every person, firm, corporation, state, county, town, city, village, school

district, sewer district, drainage district and other public or *quasi*-public corporations as well as any manager, representative, officer, or other person having ownership, control or custody of any place of employment or public building, or of the construction, repair or maintenance of any place of employment or public building, or who prepares plans for the construction of any place of employment or public building. Said sections 101.01 to 101.29, inclusive, shall apply, so far as consistent, to all architects and builders."

Sec. 40.17 (2), Stats., provides:

"Every school board and the governing body of every private or parochial school shall cause the United States flag to be displayed in the schoolroom or from a flagstaff on each school ground, during the school hours of each day's session of school."

The accident in question did not occur on Memorial or Armistice Day, nor during the school hours on the day in question. It is alleged that the accident occurred on the evening of October 11, 1938. Plaintiff's action is not based on any theory of negligence on the part of the defendant School District. The School District, in the exercise of a governmental function, would not be legally chargeable with negligence. *Sullivan v. School District,* 179 Wis. 502, 191 N. W. 1020. Of course the "safe-place" statute applies to schools and school districts. *Heiden v. Milwaukee,* 226 Wis. 92, 275 N. W. 922. But in the instant case, the accident did not occur in the school building and the flagstaff or pole which broke and fell, causing the accident, had no physical connection with the building. Clearly, the school grounds and the sidewalk area cannot be considered a public building by any stretch of the imagination. We have left, under the allegations of the complaint, the flagstaff and its concrete base. Tested by the most liberal rules, on the facts pleaded, we cannot hold that the flagpole is a "public building" within the safe-place statute. True, the flagstaff is a "structure" within the meaning of sec. 101.01 (12), Stats., but the structure

there referred to must be used as a place of resort, assemblage, lodging, trade, traffic, occupancy or use by the public, or by three or more tenants.

The appellant argues that the instant case is ruled by the decision of this court in *Bent v. Jonet,* 213 Wis. 635, 252 N. W. 290. The facts in that case are so clearly distinguishable from the facts in the instant case that we think it has no application. In the *Bent v. Jonet Case* that part of the bleachers, occupied by the plaintiff and for which he paid an admission fee of $1, was a part of the large football stadium which was constructed and put in place each football season to be used by such members of the public who desired seats in the bleacher section of the stadium. The bleachers were constructed of wooden boards supported by risers. The seats and footrests rose in tiers at an angle, the top seat being variously estimated at from seven to eleven feet from the ground. In each section there were a series of three stringers, which were connected by two-by-fours with strap iron on the ends. There was a bracket placed on the riser which contained a slot at the top with lugs projecting on each end about an inch, approximately some seven eights to an inch high. The boards, ten and one-half inches wide and sixteen feet long were placed in each bracket, there being eight of these on each riser or stringer; the stringers were held in place by bucks into which they fit and cross braces so as to make the entire structure solid. No contention was made that the bleachers were not capable of bearing the weight they were designed to carry or that they were not sufficiently solid in construction. The top seat of the bleachers was constructed like the rest, with the exception that it had no riser or stringers at the back to prevent the seat being displaced and the boards were not fastened. The plaintiff occupied a seat in this bleacher section of the football stadium and during the game, in the excitement or for the purpose of taking a stretch, the people occupying the seats in the bleachers in front of plaintiff stood

up and plaintiff also stood up. Plaintiff testified that, without looking, when he came to sit down, the plank on which he had been sitting, had got out of place thus causing him to fall a distance between five and seven feet, causing the injury. Obviously, the bleachers, within the meaning of the safe-place statute, was a public building as defined in sec. 101.01 (12), Stats. It was a place of resort, assemblage, occupancy, or use by the public. It was that part of the football stadium to which the public was admitted to witness the football games at the lowest cost. In the instant case, had the flagpole been on the school building and fallen off the building, we would have the case of an unsafe public building. It cannot be successfully contended that the flagpole in question was a place of resort, assemblage, or a place of occupancy by the public. While the public may assemble on the schoolhouse grounds and participate in a patriotic demonstration or other program, such use would not make the flagpole, the sidewalk area, or the school grounds, a public building within the meaning of sec. 101.01 (12), Stats.

The appellant further contends that the defendant School District is liable for failure to keep the school grounds, including the flagpole, in good repair and in a safe condition without regard to sec. 101.06, Stats. In this connection appellant argues that such duty is imposed by sec. 40.16 (1) and (2), Stats., which read:

"(1) Subject to the authority vested in the district meeting and to the authority and possession specifically given to other officers, the common-school board shall have the possession, care, control and management of the property and affairs of the district.

"(2) The board shall keep the buildings and grounds in good repair, suitably equipped and in safe and sanitary condition at all times. It shall also be the duty of the board to keep the buildings and equipment amply insured. If there are no funds in the school treasury sufficient to pay the premium, the board may execute a note for that purpose."

The appellant frankly concedes that no case has been found where sec. 40.16 (2), Stats., has been considered by the court in connection with tort liability. We have found none. Respondent contends that sec. 40.16 (1) and (2), Stats., is not a safe-place statute and was not intended as such, in addition to the safe-place statute; that it merely defines the powers and duties of the school board. It should be noted that prior to the enactment of ch. 252, Laws of 1929, sub. (2) of sec. 40.16, Stats., read: "The board shall keep the buildings in good repair and suitably equipped." By the amendment of 1929 there was added to said sub. (2) the following: "and grounds," and by said amendment there was added to said subsection after the words "suitably equipped," the following: "and in safe and sanitary condition at all times. It shall also be the duty of the board to keep the buildings and equipment amply insured. If there are no funds in the school treasury sufficient to pay the premium the board may execute a note for that purpose."

Appellant argues that sec. 40.16 (2), Stats., is merely an enlargement and amplification of the duties imposed by sec. 101.06, Stats. We do not so consider it. We are of the view that this statute merely defines the powers and duties of the school board. The heading of the section reads: "School board; powers and duties; school property and affairs; custody and management." The statute does not make the school district liable for the negligent failure to perform this duty. It does not abrogate the rule of nonliability of a municipality in the performance of governmental functions. In *Sullivan v. School District, supra,* the court said (p. 506):

"The doctrine of nonliability of a municipality for the performance of governmental functions is so deeply rooted in our jurisprudence and has so generally been recognized and accepted for so long a period of time that in effect it has virtually attained the force of a statute, and while such doctrine has been recognized for over a half a century no legislature has attempted to nullify it."

To the same effect see *Gensch v. Milwaukee,* 179 Wis. 95, 190 N. W. 843; *Bernstein v. Milwaukee,* 158 Wis. 576, 149 N. W. 382; *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579; *Cegelski v. Green Bay,* 231 Wis. 89, 285 N. W. 343; *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341. Legislation in derogation of the common law should be strictly construed. *Schaefer v. Fond du Lac,* 99 Wis. 333, 341, 74 N. W. 810.

*By the Court.*—Order affirmed.