HOEPNER, Appellant, vs. CITY OF EAU CLAIRE, Respondent.*

*September 9—October 6, 1953.*

* Motion for rehearing denied, with $25 costs, on December 1, 1953.

For the appellant there was a brief and oral argument by *Frank L. Morrow* of Eau Claire.

For the respondent there was a brief by *James C. Herrick, Ramsdell, King & Carroll,* and *David F. Nordstrom,* all of Eau Claire, and oral argument by *Mr. Herrick.*

CURRIE, J. Counsel for plaintiff contend that the defendant city is liable in this action both under the safe-place statute and under principles of common-law negligence. With respect to the claimed liability under the safe-place statute, the argument is advanced that the ball-playing field was both a *"place of employment"* and a *"public building"* within the provisions of sec. 101.06, Stats., which provides as follows:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, re-

pair, or maintain such place of employment or public build-ing, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

While the city had paid employees who performed work in connection with the operation of the softball diamond, the city received no income or profit therefrom. The softball game being played at the time plaintiff was injured was a league game sponsored by the Municipal Softball Association. The various teams in the league, including the team on which plaintiff played, paid an entry fee to the association. Equip-ment for playing softball was purchased from funds of the association obtained from such entry fees, but none of the income of the association was received by the defendant city, or paid into its treasury. No admissions were charged for the ball games. The defendant city, therefore, had no income or profit in the operation of the softball-playing field.

Sub. (1) of sec. 101.01, Stats., provides in part as follows:

"The phrase 'place of employment' shall mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit."

Under this statutory definition of *"place of employment"* it is clear that the softball-playing field, in the instant case, was not such place of employment because the city, in operat-ing the same, was not engaged in "any industry, trade, or business," and its employees performing work on or about such playing field were not employed for "direct or indirect gain or profit." This conclusion is well supported by de-cisions of this court in *Waldman v. Young Men's Christian*

*Asso.* (1938), 227 Wis. 43, 277 N. W. 632; and *Cegelski v. Green Bay* (1939), 231 Wis. 89, 285 N. W. 343.

We next turn to the contention that the ball-playing field constituted a *"public building"* under the safe-place statute. Whether it so constituted such *"public building"* is determined by whether it comes within the definition thereof contained in sub. (12), sec. 101.01, Stats., which provides as follows:

"The term 'public building' as used in sections 101.01 to 101.29 shall mean and include any *structure* used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants." . (Italics supplied.)

The word *"structure"* is the key word in such definition of public building as applied to the fact situation here confronting us. Our safe-place statute was enacted by the legislature in 1913. Ch. 588, Laws of 1913, which so enacted it, repealed sec. 1636–81, Stats., which had been in force and effect since 1901. Sec. 1636–81 provided in part as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering, or painting of a *house, building, or structure* shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, or other mechanical contrivances, *which are unsafe*, unsuitable, or improper, and which are not so constructed, placed, and operated as to give proper protection, to the life and limb of a person so employed or engaged." (Italics supplied.)

In the case of *Kosidowski v. Milwaukee* (1913), 152 Wis. 223, 139 N. W. 187, this court construed the word *"structure"* contained in sec. 1636–81, Stats., as embracing a water main. The court pointed out that this statute had originated in New York, and cited with approval from the opinion of the New York court of appeals in *Caddy v. Interborough Rapid*

*Transit Co.* (1909), 195 N. Y. 415, 420, 88 N. E. 747, 749, wherein the New York court declared:

". . . we incline to the view that the rule of *ejusdem generis* does not apply [to restrict the word 'structure' by reference to the word 'building.'] . . . the word 'structure' in its broadest sense includes any production or piece of work artificially built up or composed of parts joined together in some definite manner, . . ."

When our legislature enacted the safe-place statute in 1913, it was made very much broader in scope than former sec. 1636–81 in protecting the rights of employees by reason of the use of the phrase *"place of employment"* and by elimination of any reference to a building or structure. Such part of the statute was also made applicable to frequenters as well as employees. An additional provision in the safe-place statute made the same applicable to a *"public building,"* and we think the choice of the legislature of the word *"building"* is particularly significant. While a public building is defined as "any *structure* used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants," it must be kept in mind that the term *"structure"* was employed in defining the words "public *building.*"

In view of this, we do not consider the definitions of the word *"structure"* contained in decisions, such as *Kosidowski v. Milwaukee, supra,* and *Caddy v. Interborough Rapid Transit Co., supra,* and decisions of other jurisdictions, wherein structure is defined without reference to a building, are applicable in determining what structures are embraced within the term *"public building"* as used in our safe-place statute.

In *Bent v. Jonet* (1934), 213 Wis. 635, 252 N. W. 290, a temporary wooden bleacher used by spectators at a football game was held to be a structure constituting a public building; in *Feirn v. Shorewood Hills* (1948), 253 Wis. 418, 34

N. W. (2d) 107, a swimming pier consisting of a boardwalk, a board platform supported by wooden posts, a wooden bench, a diving board, and an observation tower on a platform, was held to be a public building within the meaning of the safe-place statute; and in *Flesch v. Lancaster* (1953), 264 Wis. 234, 58 N. W. (2d) 710, a municipal swimming pool was likewise held to be embraced within the statutory term *"public building."* However, the structures in these three cases had some points of similarity to a building as that term is commonly understood. On the other hand, a ball field, such as we have in the instant case, has no such point of similarity. The fact that in constructing the same it was necessary to bring in soil as a fill and to provide the sand-clay surface did not constitute the same a *"structure"* within the meaning of such term as used in our safe-place statute in defining the term *"public building."*

Inasmuch as the ball-playing field on which the plaintiff was injured did not constitute either a *"place of employment"* or a *"public building,"* liability in behalf of the plaintiff cannot be predicated upon the safe-place statute.

The municipality which maintains a playground or public park for recreation purposes, not operated for profit, is engaged in a governmental function and not a proprietary one, and therefore the municipality is not liable for the negligence of its employees. *Bernstein v. Milwaukee* (1914), 158 Wis. 576, 149 N. W. 382, and *Virovatz v. Cudahy* (1933), 211 Wis. 357, 247 N. W. 341.

Inasmuch as the plaintiff at the time of injury was making use of the ball-playing field for the purpose for which it was intended, the relationship of governor and governed existed between the city and him, and, therefore, no liability can be predicated on the theory of maintaining a nuisance. *Erickson v. West Salem* (1931), 205 Wis. 107, 236 N. W. 579; *Pohland v. Sheboygan* (1947), 251 Wis. 20, 27 N. W. (2d)

736; and *Flamingo v. Waukesha* (1952), 262 Wis. 219, 55 N. W. (2d) 24.

It is, therefore, our conclusion that the learned trial court properly directed the verdict in favor of the defendant city.

*By the Court.*—Judgment affirmed.