BALL, by Guardian *ad litem,* and others, Respondents, vs. CITY OF MADISON, Appellant.

*April 12—May 7, 1957.*

For the appellant there was a brief by *Harold E. Hanson,* city attorney, and *Alton S. Heassler,* assistant city attorney, and oral argument by *Mr. Heassler.*

For the respondents there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork,* and oral argument by *Robert L. Curry,* all of Madison.

MARTIN, C. J.   In our opinion this case is largely ruled by *Cegelski v. Green Bay* (1939), 231 Wis. 89, 93, 285 N. W. 343, where this court held:

". . . the instant [toboggan] slide was in no sense a building or a structure. The slide followed the natural slope of the hill. The only allegation of the complaint having any relation to anything other than mere smoothing and keeping smooth and covered with ice or snow the surface of the ground and banking the sides of the course with snow is that the city 'erected on said premises a wooden railing to guide the direction of the skis or toboggans' using the slide. . . . If this railing were deemed a structure such as

to constitute a public building, the railing is not alleged to be in any way unsafe or to have had any connection with the plaintiff's injuries. We consider that it cannot be regarded as within the purview of sec. 101.06, Stats."

Respondents' argument is grounded on the premise that the platform was a structure within the contemplation of sec. 101.01 (12), Stats. From that it is reasoned that the platform and the iced track below it were inseparable component parts of the slide and thus the slide was a structure within the meaning of the statute. We cannot agree that the platform was such a structure.

The safe-place statute defines "place of employment" very broadly; a place of employment can be almost any place. But the definition of "public building" is much more limited. Sub. (12) of sec. 101.01, Stats., reads:

"The term 'public building' as used in sections 101.01 to 101.29 shall mean and include any structure used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants."

In *Hoepner v. Eau Claire* (1953), 264 Wis. 608, 613, 60 N. W. (2d) 392, where it was contended that a ball-playing field constituted a public building, this court made an analysis of the statute which applies in the instant case:

". . . we think the choice of the legislature of the word *'building'* is particularly significant. While a public building is defined as 'any *structure* used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants,' it must be kept in mind that the term *'structure'* was employed in defining the words 'public *building.'*

"In view of this, we do not consider the definitions of the word *'structure'* contained in decisions, such as *Kosidowski v. Milwaukee, supra,* and *Caddy v. Interborough Rapid Transit Co., supra,* and decisions of other jurisdictions, wherein structure is defined without reference to a building,

are applicable in determining what structures are embraced within the term *'public building'* as used in our safe-place statute.

"In *Bent v. Jonet* (1934), 213 Wis. 635, 252 N. W. 290, a temporary wooden bleacher used by spectators at a football game was held to be a structure constituting a public building; in *Feirn v. Shorewood Hills* (1948), 253 Wis. 418, 34 N. W. (2d) 107, a swimming pier consisting of a board-walk, a board platform supported by wooden posts, a wooden bench, a diving board, and an observation tower on a plat-form, was held to be a public building within the meaning of the safe-place statute; and in *Flesch v. Lancaster* (1953), 264 Wis. 234, 58 N. W. (2d) 710, a municipal swimming pool was likewise held to be embraced within the statutory term *'public building.'* However, the structures in these three cases had some points of similarity to a building as that term is commonly understood. On the other hand, a ball field, such as we have in the instant case, has no such point of similarity. The fact that in constructing the same it was necessary to bring in soil as a fill and to provide the sand-clay surface did not constitute the same a *'structure'* within the meaning of such term as used in our safe-place statute in defining the term *'public building.'* "

By using the word "structure" in defining the term "public building," the legislature did not broaden that term to include anything that is built. The fact that something is constructed and intended for public use does not alone constitute the structure a public building unless it has some aspects of similarity to a building as that term is commonly understood. Since the word is used in the limited sense of defining "public building," it cannot be regarded as embracing a structure which does not have any of the characteristics of a building. Nor does the intended use of the platform so characterize it. It is not, as the complaint states, used "as a place of resort and assemblage." The same contention was made in *Meyers v. St. Bernard's Congregation* (1954), 268 Wis. 285, 67 N. W. (2d) 302, where the court con-

sidered the character of a large concrete platform or concourse reached by two steps of stairs and located in front of the entrance to a church. This was used both as a means of travel by those going into and out of the church and as a place where members of the parish assembled before and after the services. It was held that nothing in the record showed that the steps and concourse were intended to be used as anything but an approach to the church and thus fell within the rule of the so-called "sidewalk" cases, such as *Lawver v. Joint District* (1939), 232 Wis. 608, 288 N. W. 192; *Baldwin v. St. Peter's Congregation* (1953), 264 Wis. 626, 60 N. W. (2d) 349; *Mistele v. Board of Education* (1954), 267 Wis. 28, 64 N. W. (2d) 428.

As the place of "take-off" for users of the toboggan slide, this platform was no more intended as a place of resort and assemblage than was the concourse in the *St. Bernard's Congregation Case.* The fact that several people would gather there to seat themselves on a toboggan preparatory to sliding down the hill does not so characterize it. Like steps, a concourse, or a sidewalk, it simply provides a means of travel from one place to another.

And this is another feature distinguishing the platform from the pier in the case of *Feirn v. Shorewood Hills* (1948), 253 Wis. 418, 34 N. W. (2d) 107. The pier in that case was 75 feet long and there was a platform at the end 12 by 16 feet on which a diving board, an observation tower, and a wooden bench were located. It is common knowledge that a pier of that kind provides a place for recreational activities such as playing, resting, and sunbathing in addition to providing access to and from the water for swimmers, and the wooden bench and observation tower would accommodate persons who desired to congregate and engage in activities other than swimming. In the *St. Bernard's Congregation Case, supra,* the court said (268 Wis. at p. 289) :

"In the *Feirn Case, supra,* this court was dealing with a swimming pier where a platform, bench, diving board, and observation tower were erected as a place of assemblage for the general public and where the same was one unit serving the purpose for which it was constructed."

Since the platform in this case cannot be considered a public building under the safe-place statute and the ice track below it cannot, under the *Cegelski Case, supra,* be so considered, it must be held that the complaint fails to state facts sufficient to constitute a cause of action and the demurrer should have been sustained.

In our opinion the complaint also fails to allege any facts to support its conclusion that the slide was unsafe and dangerous. A curve in the slide would not of itself render the slide unsafe; and its location adjacent to trees would, it seems to us, be an allegation of negligence rather than faulty design and construction. We do not decide these matters, however, since a decision thereon would be immaterial in view of the position we have taken above.

*By the Court.*—Order reversed, and cause remanded with instructions to sustain the demurrer.

WINGERT, J. (*dissenting*). I cannot agree that the complaint fails to state a cause of action under the safe-place statute. In my opinion the toboggan slide as described therein is a "structure" constituting a "public building" as that term is defined by sec. 101.01 (12), Stats., and which the owner is required by sec. 101.06 to "so construct, repair, or maintain . . . as to render the same safe."

The complaint describes an integral unit, comprising a wooden platform, an inclined wooden sliding track surfaced with ice from the platform to a point nearer the surface of the ground, and from thence a sliding track made of ice blocks with ice-block railings or guides. This is a structure; a thing that has been constructed. It is immaterial that the

part alleged to have been defective was made of ice instead of wood, steel, or concrete. The case differs from *Cegelski v. Green Bay,* 231 Wis. 89, 285 N. W. 343, where the toboggans slid on the surface of the ground as it was covered with snow or ice. A snow-covered strip of ground is not a "structure," but the raised artificial track of ice blocks may qualify as one.

By the statutory definition, sec. 101.01 (12), *"any* structure" is a "public building" within the scope of the safe-place statute, if it is "used in whole or in part as a place of resort, assemblage, . . . traffic, occupancy, or use by the public." The toboggan slide described in the complaint meets those specifications. The complaint alleges that it was "used in whole or in part as a place of resort and assemblage for occupancy and use by the public" in a public park maintained by the city; an allegation of ultimate fact which, if proved, would bring the slide within the coverage of the statute.

The decisions of this court have perhaps not been altogether consistent in drawing the line between structures that are within or without the statutory definition of "public building." I think that the present case falls within the principle of the cases in which a bathing pier, a swimming pool, and temporary bleachers at an athletic field have been held to be "public buildings" within the meaning of the statute (*Feirn v. Shorewood Hills,* 253 Wis. 418, 34 N. W. (2d) 107; *Flesch v. Lancaster,* 264 Wis. 234, 58 N. W. (2d) 710; *Bent v. Jonet,* 213 Wis. 635, 252 N. W. 290), and is not controlled by the sidewalk, step, and concourse cases referred to in the majority opinion.

The words of the safe-place statute are broad enough, giving them their ordinary usage, to cover the toboggan slide. I cannot believe the legislature intended them to have a narrowly restricted interpretation with respect to amusement facilities installed at public parks for intended use by large numbers of children.

I also think that the complaint sufficiently states that the slide was not "safe," when it alleges that the defendant "designed, constructed, and maintained a curve in said slide . . . in close proximity to several large trees, rendering the same unsafe and dangerous for users thereof." Toboggan sleds attain high speeds, and we should not say as a matter of law that a curve could not render the slide unsafe.

I would therefore affirm the circuit court's order overruling the demurrer.

I am authorized to say that Mr. Justice STEINLE and Mr. Justice FAIRCHILD join in this opinion.