ROGERS, by Guardian *ad litem,* Respondent, v. CITY OF OCONOMOWOC, Appellant.

*April 4—June 5, 1962.*

623

For the appellant there was a brief by *Hippenmeyer &
Reilly* of Waukesha, and *Andrew J. Zafis,* city attorney of
Oconomowoc, and oral argument by *Mr. Richard S. Hippen-
meyer* and *Mr. Zafis.*

For the respondent there was a brief by *Morrissy, Mor-
rissy, Sweet & Stowe* of Elkhorn, and oral argument by
*Ralph R. Stowe.*

BROWN, C. J.

### *Improper Claim.*

The complaint alleges that on March 21, 1961, the guard-
ian *ad litem* made a demand upon the city for compensation
to the minor for the injuries already referred to and that
more than ninety days have elapsed since the demand. A
copy of the demand is incorporated in the complaint.
Sec. 62.25, Stats., forbids a plaintiff to maintain an action
against a city for damages until he shall first have presented
his claim to the city council and the claim has been dis-
allowed or not passed upon by the council within ninety days
after the claim was presented.

The city's present contention is that the demand by the
guardian *ad litem* appears on its face to be dated and veri-
fied March 6, 1961, whereas the complaint itself alleges that
the guardian *ad litem* was appointed March 9, 1961. Ap-
pellant submits that on March 6th there was no guardian
*ad litem* by whom the claim could be made or presented,
wherefore no proper claim has been presented to the city

council and the condition precedent to plaintiff's beginning an action has not been met.

It is true, the claim was dated and sworn to by a purported guardian *ad litem* when she had not yet been appointed. It is arguable, though we do not so decide, that the claim, if then presented, might be so defective as not to comply with the requirement of sec. 62.25, Stats., and of no effect. But the claim was not presented then. It was kept back until the guardian *ad litem* had been appointed. Then, on March 21, 1961, she presented the claim. We consider the date of presentation is the controlling date, and on that date the guardian *ad litem* was qualified to act. Referring to a claim against a city we wrote in *Moyer v. Oshkosh* (1913), 151 Wis. 586, 593, 139 N. W. 378:

"No narrow rule of construction should be applied to the wording of the claim. A construction which preserves a *bona fide* claim so that it may be passed upon by a competent tribunal is to be preferred to a construction which cuts it off without trial. This court has said that 'no great amount of formality is required in reference to the form in which claims are presented to a municipal corporation.' *Hanrahan v. Janesville,* 137 Wis. 1, 118 N. W. 194."

The demurrer resting on the contention that no proper claim had been filed was correctly overruled.

## *Misjoinder.*

Appellant next urges that several causes of action have been improperly united. They submit that under sec. 263.04, Stats., this complaint is demurrable. Sec. 263.04 provides:

"UNITING CAUSES OF ACTION. The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both. But the causes of action so united must affect all the

parties to the action and not require different places of trial, and must be stated separately."

See also *Karass v. Marquardt* (1939), 230 Wis. 655, 284 N. W. 514, and *Midland Terra Cotta Co. v. Illinois Surety Co.* (1916), 163 Wis. 190, 157 N. W. 785.

Here the first cause of action is against the city under the safe-place statute. Allegations of gross negligence and nuisance are also made against the city. The second cause is against Miss Higgins, the lifeguard, for gross and ordinary negligence, while the third cause is against Houtz, the director of recreation, for ordinary negligence.

Appellant contends that a cause of action against the city for a violation of the safe-place statute does not affect either Houtz or Higgins and further that the gross negligence of Higgins does not affect Houtz. We consider that appellant's contention in this respect is subject to several defects.

Its objection to a joinder of causes of action in both gross and ordinary negligence disregards the recent decision in *Bielski v. Schulze,* ante, p. 1, 114 N. W. (2d) 105. There the court recognized that in the usual negligence case, that which has been termed "gross negligence" is only a high percentage of ordinary causal negligence and a distinction between them in treatment or effect has no sound basis. Therefore the court abolished the concept of gross negligence in such cases as the one now before us and we need not be concerned now with any difficulties arising from a joinder of the present cause of action pleaded as gross negligence and that pleaded as ordinary negligence.

Appellant's submission that a cause of action against the city based upon the safe-place statute is misjoined with a cause of action against the individual defendants for their own negligence fails to convince us.

To begin with, the joinder of causes of action has been treated in Procedure—Joinder of Causes of Action in Wis-

consin, 1955 Wisconsin Law Review, 458. At page 461 the author notes that the Wisconsin supreme court has relied heavily on Pomeroy's analysis of a cause of action, and that in determining how many causes of action are stated in the complaint, the court has often said:

" 'The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication.' "

The latest expression of this was made in *Cohn v. Zippel* (1961), 12 Wis. (2d) 258, 107 N. W. (2d) 184, and in *Whaling v. Stone Construction Co.* (1958), 5 Wis. (2d) 113, 92 N. W. (2d) 278.

In explaining this principle, the court stated in *Herman v. Felthousen* (1902), 114 Wis. 423, 425, 90 N. W. 432:

"The test to be applied in order to determine whether a complaint states more than one cause of action, is whether, looking at the whole pleading, there is more than one primary right presented thereby for vindication. There may be many minor subjects, and facts may be stated constituting independent grounds for relief, either as between the plaintiff and all the defendants, or the former and one of the latter, or between defendants, and there be still but a single primary purpose of the suit, with which all the other matters are so connected as to be reasonably considered germane thereto—parts of one entire subject, presenting to the court but one primary ground for invoking its jurisdiction."

Since there is only one subject of controversy (the accident) in the case at bar and only one primary right of plaintiff, there is only one cause of action.

We note that an even more-liberal definition of cause of action has been urged by Judge CHARLES E. CLARK, Code Pleading (hornbook series, 2d ed.), p. 130, sec. 19. He urges that a cause of action be considered "as referring to

such a group of facts, but limited as a lay onlooker would to a single occurrence or affair, without particular reference to the resulting legal right or rights."

Sec. 260.11, Stats., provides:

"WHO AS DEFENDANTS. (1) Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. A plaintiff may join as defendants persons against whom the right to relief is alleged to exist in the alternative, although recovery against one may be inconsistent with recovery against the other; and in all such actions the recovery of costs by any of the parties to the action shall be in the discretion of the court."

As employees, agents, or officers of the city the doctrine of *respondeat superior* may impose on the city liability for their negligence and the cause of action against the city may properly be united with the actions against such individuals.

Also, if the two statutes conflict, sec. 260.11 prevails over the limitation of sec. 263.04 which demands that a cause of action united in a complaint must affect all parties to the action. *De Groot v. Peoples State Bank* (1924), 183 Wis. 594, 198 N. W. 614. See also *Larson v. Lester* (1951), 259 Wis. 440, 49 N. W. (2d) 414, where causes of action were united against a village and one of its policemen in the alleged shooting of plaintiff. The complaint was sustained against demurrer. We reached the same conclusion in *Matczak v. Mathews* (1953), 265 Wis. 1, 60 N. W. (2d) 352. *Smith v. Jefferson* (1959), 8 Wis. (2d) 378, 385, 99 N. W. (2d) 119, also held that,

"In view of the provision of sec. 260.11 (1) which provides that, 'Any person may be made a defendant . . . who is a necessary party to a complete determination or settlement of the questions involved' in the action, the municipality may be joined as a party defendant in an action brought

under sec. 270.58 against the officer. *Larson v. Lester* (1951), 259 Wis. 440, 49 N. W. (2d) 414."

In the *Larson Case,* page 444, we held that under certain conditions (which appear to be present now) a political subdivision is required to protect its policemen against damage claims. We see no valid distinction in the status of Larson, the policeman, and Higgins, the lifeguard nor, for that matter, of the director of recreation in so far as concerns the present demurrer. It follows, then, that the political subdivision, the city of Oconomowoc, has a legitimate interest in the controversy between the plaintiff and the city's lifeguard and its director, and the city may be made a defendant, per sec. 260.11, Stats.

This court has also stated that sec. 260.11 (1), Stats., pertaining to persons who may be named as defendants, is to be liberally construed as a remedial measure. *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. (2d) 549, 97 N. W. (2d) 485. We conclude that the causes of action were not improperly united in the present complaint and, as to this ground, the demurrer was correctly overruled.

### *Cause of Action.*

The complaint, setting out the cause of action against the city, alleges that the city owned, maintained, and operated a public park and bathing area, as more fully described in our foregoing statement of facts and that the park and its installations, all connected, constituted a place of employment and/or a public building within the meaning of sec. 101.06, Stats. The complaint sets forth the city's alleged breaches of duty, thus:

"10. That the defendant city was negligent in its duty as an owner of a place of employment or a public building to maintain the said place or building in a safe condition in the following particulars:

"(a) Negligently maintained a seawall, which by its construction caused the accumulation of water adjacent thereto at such depths as to render the structure unsafe to users thereof;

"(b) Suffered to be maintained a beach underneath the water and adjacent to the said seawall, which said beach was built up to a depth of approximately eighteen (18) inches below water level, which beach so constructed and maintained rendered the structure unsafe to users thereof;

"11. That the said defendant city was grossly negligent in its duty to maintain the said structure in a condition that would render the same safe for the use of minors and those of tender years in these further ways:

"(a) Failure to erect and maintain chain guard or rail along the top of the seawall structure;

"(b) Failure to establish and control a specified place for ingress and egress over the said seawall structure;

"(c) Failure to erect steps from the top of the said seawall structure into the water;

"(d) Failure to erect and maintain signs on or near the said seawall structure as to the use of said seawall, and failure to erect and maintain signs warning of the shallowness of the water adjacent to and contained by the said seawall structure;"

Plaintiff's contention, that the area with its described structures is a place of employment, is quickly refuted by *Hoepner v. Eau Claire* (1953), 264 Wis. 608, 60 N. W. (2d) 392. Sec. 101.01 (1), Stats., defines a place of employment as a place where any trade or industry is carried on or where any person is employed for direct or indirect gain or profit. In *Hoepner* we said (p. 611):

"Under this statutory definition of 'place of employment' it is clear that the softball-playing field, in the instant case, was not such place of employment because the city, in operating the same, was not engaged in 'any industry, trade, or business,' and its employees performing work on or about such playing field were not employed for 'direct or indirect gain or profit.'"

This is equally applicable to the municipality's operation of the recreational park and bathing beach. Plaintiff's conclusion that these facilities constitute a place of employment cannot be sustained.

There remains the complaint's allegation that the premises where plaintiff sustained his injury constituted a public building within the meaning of sec. 101.06, Stats.

The applicable part of sec. 101.06, Stats., is:

". . . every owner of a . . . public building . . . shall so construct, repair, or maintain such . . . public building as to render the same safe."

Definitions of the terms used by the statute appear in sec. 101.01 (11) and (12) as follows:

"(11) The term 'safe' or 'safety' as applied to an employment or a place of employment or a public building, shall mean such freedom from danger to the life, health, safety, or welfare of employees or frequenters, or the public, or tenants, or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the employment, place of employment, or public building, will reasonably permit.

"(12) The term 'public building' as used in secs. 101.01 to 101.29 means and includes any structure, including exterior parts of such building, such as a porch, exterior platform, or steps providing means of ingress or egress, used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public or by three or more tenants."

In *Bent v. Jonet* (1934), 213 Wis. 635, 252 N. W. 290, plaintiff was injured when he fell from bleachers erected to provide seats for spectators at a football game. The bleachers were held to be a public building within the meaning of the safe-place statute. There we held defendant's breach of a duty imposed by the statute is a type of statutory negligence.

The safe-place statute does not create a cause of action but merely lays down a standard of care, and if those to whom it applies violate its provisions they are negligent. *Ermis v. Federal Windows Mfg. Co., supra,* page 555.

In *Umnus v. Wisconsin Public Service Corp.* (1952), 260 Wis. 433, 51 N. W. (2d) 42, we held that the omission of guardrails may be a question for the jury whether the defendant owner had made the place safe as required by the statute. The place, there, was a place of employment but secs. 101.01 (11) and 101.06, Stats., apply equally to public buildings.

We conclude that the complaint's allegations of negligence and causation are adequate to withstand attack by demurrer.

Whether the complaint states facts sufficient to bring the premises in question within the safe-place statute *as a public building* presents a closer question. A complaint, when attacked by demurrer, should be liberally construed and sustained if it expressly or by reasonable inference states any cause of action. *Bembinster v. Aero Auto Parts* (1959), 7 Wis. (2d) 54, 95 N. W. (2d) 778.

In *Ball v. Madison* (1957), 1 Wis. (2d) 62, 82 N. W. (2d) 894, a toboggan-slide case, we held that to be considered a public building, as contemplated by the safe-place statute, the structure must have some aspects of similarity to a building; and a majority of the court concluded that the slide lacked such aspects. Present appellant considers that the facts in *Ball* are sufficiently close to those in the case at bar to deny the public-building classification to the seawall and beaches, and to require the demurrer to the complaint be sustained.

On the other hand, in *Feirn v. Shorewood Hills* (1948), 253 Wis. 418, 34 N. W. (2d) 107, an injury occurred when a frequenter of a bathing pier slipped and fell because the wet boards of the pier had become slippery. The complaint alleged that the pier was a platform supported by posts

and upon it there was constructed a wooden bench, a diving board, and an observation tower. By reason of these structures the plaintiff alleged that the pier and platform was a public building. A demurrer to the complaint was overruled and this court affirmed. We held (p. 421):

". . . under and in view of the above-stated allegations in the complaint as to the nature and manner of construction and the defendant's intended and actual purposes and uses of the pier and platform as a place of resort, assemblage, occupancy and use by the public, it was clearly a 'structure' and 'public building' under the safe-place statute, within the meaning of those terms therein, as construed and applied in *Bent v. Jonet,* 213 Wis. 635, 252 N. W. 290."

The present complaint has obviously been drawn to accord with the allegations deemed sufficient in the *Feirn Case,* and we consider the facts as pleaded come closer to the situation in *Feirn* than in *Ball, supra.* The complaint now in question describes a bathhouse, concession building, pier, and lifeguard stand which must all be considered public buildings within the rule of *Feirn.* There may be very serious doubts whether, by themselves, the seawall and artificial beaches have the semblances of buildings, but the complaint alleges that all of the structures mentioned were connected and constituted "a structure." *A* structure is a single structure. By sec. 101.01 (12), Stats., the exterior parts of the building, such as porches, platforms, steps, of a public building are to be considered a part of the building.

The eminent counsel of the respective parties were familiar with the park, bathing beach and its appurtenances and both of them based a considerable part of their arguments on their separate versions of the construction, characteristics, appearance, and functions of the wall and its connection with those other structures which undoubtedly are public buildings. Though their descriptions very likely give us an idea of the *locus in quo,* the complaint is silent on many of such oral

allegations. We are, of course, limited to the facts contained in the complaint itself and to the reasonable implications to be drawn from them. The complaint does allege that all the installations mentioned were connected and as so connected constituted an integral physical unit, reasonably described as a public building within the meaning of the statute.

In reaching decision on demurrer we must take such allegations of fact as true and established. We are not concerned now with difficulties the pleader may encounter in proving the truth of his allegations, particularly in the assertion that the combination of all the structures results in the wall and beaches being but parts of a single public building. We conclude that, taking the allegations as true and provable, the complaint states a cause of action upon which plaintiff is entitled to go to trial and prove the truth of his allegations if he can. Consequently, we consider that the demurrer was correctly overruled.

*By the Court.*—Order affirmed, and cause remanded for further proceedings in accordance with law. The twenty days which the order granted the city to answer the complaint is extended for twenty days from the date of the remittitur.

CURRIE, J. (*dissenting*). I respectfully dissent from the determination of the majority that the complaint states facts sufficient to constitute a cause of action under the safe-place statute.

First, I do not consider a seawall to be a structure bearing any resemblance to a public building. This in itself renders the complaint fatally defective under our holding in *Hoepner v. Eau Claire* (1953), 264 Wis. 608, 60 N. W. (2d) 392.

Second, plaintiff was not injured because of any defect or unsafe condition of the seawall, but because he dove from it into shallow water. Certainly, the beach beyond the seawall was not part of a structure even if the result of artificial fill. In the *Hoepner Case* we held that a baseball diamond con-

structed of fill material was not a "structure" within the meaning of the safe-place statute. A beach made as a result of fill stands in the same category.

Giving the complaint its most-liberal interpretation, the negligence of defendant city consisted in a failure to warn plaintiff of the shallowness of the water. This is active negligence for which the city is not liable under the doctrine of municipal tort immunity, and plaintiff has not addressed any argument to us in this case asking for the abolition of such doctrine.

I am authorized to state that Mr. Justice HALLOWS joins in this dissenting opinion.