Frederick V. COSTE and Jean Coste,
Plaintiffs,

v.

CITY OF SUPERIOR, a Municipal Body
Corporate, Defendant.

Civ. No. 1014.

United States District Court
W. D. Wisconsin.

July 16, 1964.

J. L. Davis, Hughes, Anderson, Davis & Witkin, Superior, Wis., for plaintiffs.

Paul L. Witkin, Johnson, Fritschler, Barstow & Witkin, Superior, Wis., John C. Murphy, City Atty., City of Superior, Superior, Wis., for defendant.

RABINOVITZ, District Judge.

The matter before the Court is a motion for summary judgment brought under Rule 56, Federal Rules of Civil Procedure, on the ground that no genuine issue as to any material fact exists and that the complaint does not state a cause of action against the defendant.

The plaintiff, Jean Coste, was injured on December 29, 1961, when the toboggan upon which she was riding hit a bump on the Nemadji Hill toboggan slide, "causing the said plaintiff, Jean

Coste, to fly into the air and away from said toboggan; that when she fell back onto the toboggan it was with such force that she suffered serious and permanent personal injuries," according to the allegations in the complaint.

Defendant answered, denying the material allegations of the complaint, that of negligence, nuisance, and two causes of action for violation of the safe-place statutes of Wisconsin. In particular, defendant in its answer to the nuisance cause of action affirmatively alleged the relationship of "governor and governed", which is sufficient to raise the defense of governmental immunity.

Plaintiffs are citizens of the state of Minnesota, residing in the City of Minneapolis. Defendant is a municipal corporation created under Wisconsin law. Jurisdiction of this Court exists by virtue of diversity of citizenship and that the amount in controversy exceeds $10,-000, exclusive of costs. 28 U.S.C.A. § 1332.

About twenty years ago the areas of the toboggan hill, which was the place of the accident, a toboggan and ski slide was improved by the City of Superior as a W.P.A. project. It was used for some time, but the ski slide was removed in 1949, and the toboggan slide was removed in 1956. No further improvements or maintenance was made by the City of Superior, and no coordinated use was made of the hill until 1961.

In the fall of 1961, the Superior Chapter of the Junior Chamber of Commerce promoted the use of the hill as a winter sports facility. The members of the Junior Chamber of Commerce cleaned up the hill side of broken glass, tin cans, and other debris. They secured an old railroad box car and with the aid of the Public Works Department of the City of Superior, moved it to the hill near the parking area for use as a warming house. The warming house was turned over to the City of Superior on December 23, 1961. The City employed a caretaker for the purpose of keeping a warming fire going; insuring that firewood was available; and to generally keep the place

clean. There were no structures on the hill except for the warming house.

No charge was made to any person for the use of the hill. Nothing was sold on the premises and the place was not operated as a commercial venture or for profit. Aside from the warming house, the City did nothing to the hill, except on one occasion to haul in several truck loads of snow to make the hill more even and less bumpy. There were no artificial toboggan slides or tracks.

Prior to the time of the injury, defendant had purchased a public liability insurance policy, the material portions of which are:

"Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

### "WAIVER OF IMMUNITY ENDORSEMENT

#### "Municipal and Charitable Organizations

"It is agreed that in any claim or suit for damages covered by the policy, *except by written request of the named insured by its duly authorized officer*, the company will not use, either in the adjustment of claims or in the defense of suits against the insured, the immunity of the insured from tort liability." (Emphasis added).

### MUNICIPAL IMMUNITY

▮▮ In Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962), the Court abrogated the defense of governmental immunity. However, in so doing the Court made its ruling prospective. Causes of action arising prior to July 15, 1962, are governed by the prior law of governmental immunity. See also, Niedfelt v. Jt. School Dist. No. 1, City of Viroqua, 23 Wis.2d 641, 127 N.W. 2d 800 (1964), where the Court adhered

to its ruling in the Holytz case that immunity ceases to be a defense only in actions accruing after July 15, 1962.

## INVOCATION OF IMMUNITY UNDER THE INSURANCE CONTRACT

■ Toby E. Marcovich, then City Attorney for defendant, by affidavit, filed herein, stated that after consulting with the then Mayor of the defendant, the Mayor requested the City Attorney to advise the City's insurer that it intended to invoke its right of municipal immunity. The letter, dated August 17, 1962, addressed to the insurer's attorneys, read as follows: "Relative to the suits pending against the City of Superior for injuries sustained by various plaintiffs at the Nemadji Toboggan Slide, please be advised that the City of Superior desires to assert the defense of governmental immunity in each of these cases. Further, with regard to the cases in which the amount claimed is in excess of the policy limits, this is to advise you that I will participate in the defense of these actions representing the City's interest so far as such excesses are involved."

The plaintiffs argue that the defendant waived its defense of governmental immunity because of its purchase of liability insurance; and that the City Attorney lacked authority to invoke the City's right of governmental immunity under the insurance policy.

■ There is no waiver of immunity merely because a municipality takes out a policy of liability insurance "which does not contain the condition or agreement to refrain from raising the defense of governmental immunity." Koenig v. Milwaukee Blood Center, Inc., 23 Wis.2d 324, 127 N.W.2d 50 (1964).

The insuring agreement and the waiver of immunity endorsement in Koenig are the same as in the present case. The insuring agreement provided:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury  *  *  *."

The waiver of immunity provided:

"WAIVER OF IMMUNITY ENDORSEMENT

"Municipal and Charitable Organizations

"It is agreed that in any claim or suit for damages covered by the policy, except by written request of the named insured by its duly authorized officer, the company will not use, either in the adjustment of claims or in the defense of suits against the insured, the immunity of the insured from tort liability."

In Koenig the Board of Directors of defendant formerly invoked their right to immunity. The Supreme Court held that there was immunity.

In the case at bar, the defendant, by its City Attorney, under the terms of the insurance policy, invoked the City's right of immunity from suit.

In Marshall v. City of Green Bay, 18 Wis.2d 496, 118 N.W.2d 715 (1963), the defense of municipal immunity was held to have been waived. Marshall was also a toboggan case. The insurance policy in Marshall provided that "the company will not avail itself of the defense that the city is not liable because of the performance of governmental functions." 18 Wis.2d 497, 118 N.W.2d 716. This provision in the policy clearly distinguishes Marshall from both Koenig and the case at bar. In Koenig and the case at bar, the defendants exercised their right to defend under the doctrine of immunity, as applicable to the respective defendants. See also, Niedfelt v. Jt. School Dist. No. 1, City of Viroqua, supra. Further, in Marshall it is not indicated whether the City took any affirmative action to invoke its immunity, assuming that it could under the insurance policy.

This Court believes that the Koenig case, supra, is controlling as respects defendant's waiver of its right of municipal immunity under the terms of the insurance policy.

There is no question but that the then City Attorney had authority to invoke the City's defense of governmental im-

munity. The City Attorney acted pursuant to the direction of the Mayor and the Common Council of defendant City.

An affidavit by the City Clerk of defendant was filed in this action. It stated:

"Excerpts from minutes of Common Council of the City of Superior, Wisconsin, held February 20, 1962—

" 'Personal injury claim of Mr. and Mrs. Vernon Coste, Minneapolis, who were injured at the Nemadji Recreation Center, was read.

" 'Moved by Alderman Paones, seconded by Alderman Hanlon, that the claim be received and referred to the City Attorney. Motion carried by acclamation.

"Excerpts from minutes of Common Council of the City of Superior, Wisconsin, held August 7, 1962—

" 'Summons in U. S. District Court was read, Frederick V. Coste, and Jean Coste, Minneapolis, Minnesota, vs. City of Superior regarding injury to Jean Coste at the Namadji Hill on December 29, 1961. There being no objections, the claim was referred to the City Attorney for disposition.' "

Sec. 62.09(8) (a), Wis.Stats., provides:

"The mayor shall be the chief executive officer. He shall take care that city ordinances and state laws are observed and enforced and that all city officers and employees discharge their duties."

Pursuant to this section, the Mayor, as the chief executive officer of defendant, directed the City Attorney to discharge his duty. The duty of the City Attorney is stated in Sec. 62.09(12) (a):

"The attorney shall conduct all the law business in which the city is interested."

■ Unquestionably, this lawsuit is "law business in which the city is interested." The City Attorney is duty bound to act in the best interests of the City in the defense of its lawsuits.

In McQuillin, The Law of Municipal Corporations, Sec. 49.33, it is said: "Municipal corporations are bound by the acts of their attorneys in like manner as private corporations and individuals, so that, in the absence of fraud or collusion on their part, the general rule is that attorneys have power to bind their clients, including municipal corporations, by admissions, stipulations, and, although such act must in some jurisdictions be expressly authorized, by consenting to judgments or decrees."

The statutes, the Mayor, and the Common Council authorized the action of the City Attorney. If he, in the exercise of his discretion, considered and followed a means of disposition of the case whereby the City was absolved of all liability, it can scarcely be doubted that such action or disposition would not meet with the approval of the City officials. The City of Superior properly invoked its governmental immunity. That ends the matter.

## NUISANCE

■ Prior to the Holytz case, supra, a municipality was not liable in tort for injuries resulting from a dangerous nuisance where the relationship of governor and governed existed. Laffey v. City of Milwaukee, 4 Wis.2d 111, 89 N.W.2d 801 (1958).

The maintenance of a toboggan hill or slide is a governmental function. Marshall v. City of Green Bay, supra; Cegelski v. City of Green Bay, 231 Wis. 89, 285 N.W. 343 (1939).

Plaintiffs were the "governed" and defendant was their "governor". "Inasmuch as the plaintiff at the time of injury was making use of the ball-playing field for the purpose for which it was intended, the relationship of governor and governed existed between the city and him, and therefore no liability can be predicated on the theory of maintaining a nuisance." Hoepner v. City of Eau Claire, 264 Wis. 608, 60 N.W.2d 392 (1953). Accord: Niedfelt v. Jt. School

Dist. No. 1, City of Viroqua, supra; Laffey v. City of Milwaukee, supra. Whether or not the toboggan slide was a nuisance, as alleged in plaintiffs' complaint is immaterial, for such a situation if true is not actionable.

## PLACE OF EMPLOYMENT AND PUBLIC BUILDING

■ Plaintiff alleged a violation of the Wisconsin safe-place statute in two respects; failure to provide a safe-place for frequenters and failure to provide a building as safe as it will reasonably permit.

Sec. 101.01(1), Wis.Stats., provides:

"The phrase 'place of employment' includes every place, whether indoors or out * * * where either temporarily or permanently any industry, trade or business is carried on, * * * and where any person is * * * employed by another for direct or indirect gain or profit * * *."

Sec. 101.01(5), Wis.Stats., provides:

"The term 'frequenter' shall mean and include every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

Sec. 101.01(11), Wis.Stats., provides that the term "safe" or "safety" when applied to a place of employment or a public building, means "such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public, * * *, as the nature of the employment, place of employment, or public building, will reasonably permit."

Sec. 101.01(12), Wis.Stats., defines public building as "any structure used * * * as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public * * *."

Sec. 101.06, Wis.Stats., provides that "every employer and every owner of a place of employment or a public building * * * shall so construct, repair or maintain such place of employment or

public building * * * as to render the same safe."

In Cegelski v. City of Green Bay, supra, it was held that a "toboggan slide is not a place of employment within the meaning of Sec. 101.01(1); and that the maintenance of the slide was not 'industry, trade or business.'" The Nemadji Hill was not a place of employment, nor industry, trade or business. Therefore, the duty to provide a safe-place for frequenters under Sec. 101.06 did not arise.

■ Plaintiff argued that the toboggan slide was a place of employment because the caretaker was an employee, working for gain or profit. This is not the test or the law. The test is whether the employer or owner (here the defendant City) is operating the enterprise for the purpose of gain or profit, and it is immaterial that the employees work for gain or profit. In Rogers v. City of Oconomowoc, 24 Wis.2d 308, 128 N.W.2d 640 (1964), it is said:

"Plaintiff contends that the definition of place of employment applies because the employees work for gain, and asks us to change our previous construction that the absence of the profit motive on the part of the city prevents the place being treated as a place of employment."

The Court adhered to its previous rulings. Accord: Hoerter v. City of West Allis, 23 Wis.2d 567, 127 N.W.2d 768 (1964).

The Nemadji Hill is also not a structure or public building. The duty to provide a building as reasonably safe as it will permit therefore does not arise under Sec. 101.06. Cegelski v. City of Green Bay, supra.

In Cegelski it appeared that the City kept the snow smooth, and brought in additional snow if required. It erected a wooden railing to guide the skiers and toboggan riders. In the present case, the City did nothing to the slide except on one occasion to haul in some snow. There were no artificial tracks or slides.

In Rogers v. City of Oconomowoc, supra, a man-made retaining wall to sepa-

rate the lake from the beach, was not a structure or building. It was decisive in Rogers that the allegedly offending structure was not part of any building, such as the public bath house at the beach. It is clear therefore that the Nemadji Hill toboggan slide is not a structure or building.

### ORDER

Defendant's motion for summary judgment is granted for the reasons that at the time of the accident, the defendant was immune from liability in tort; that the defendant did not waive its municipal immunity; that the relationship of governor and governed applied herein and hence the defendant was not liable for injuries resulting from the maintenance of a nuisance; and that the toboggan slide did not come within the purview of the safe-place statute for the reason that the slide is not a place of employment nor a structure or public building.

Defendant will prepare a judgment in conformity with this opinion, to be submitted to the Court within twenty days.