ALLISON, Respondent, vs. WM. DOERFLINGER COMPANY, Appellant.

*April 7—May 10, 1932.*

For the appellant there was a brief by *Geo. H. Gordon, Law & Gordon* of La Crosse, and oral argument by *Stanley G. Gordon.*

For the respondent there was a brief by *George P. Ruediger,* attorney, and *Higbee & Higbee* of counsel, all of La Crosse, and oral argument by *Mr. Jesse E. Higbee* and *Mr. Ruediger.*

FRITZ, J.    Plaintiff sued to recover damages for personal injuries sustained by her in falling while walking down a stairway leading from the first floor to the basement floor in defendant's department store.    Seventeen steps, seven feet wide, extended downward to the northerly side of a platform, which was about seven feet square.    From all sides of the platform, excepting the northerly side, there were stairways, with four risers, descending to the basement floor. Along each side of the upper series of seventeen steps there was a hand-rail, which ended with that series at a newel post at the platform, but there was no hand-rail on or about the platform or the steps extending from there to the basement floor.

On behalf of the plaintiff it was contended that because of the absence of hand-rails on or about the platform and extending from there to the basement floor, the defendant failed to maintain the place as free from "danger to the life, health, safety or welfare of employees or frequenters, or the public . . . as the nature of the employment, place of employment, or public building, will reasonably permit" (sec. 101.01 (11), Stats.) ; that such failure constituted a violation of sec. 101.06, requiring that every employer shall "furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters," and also a violation of safety order No. 6103 of the

Industrial Commission, which was applicable to the place in question and which provides: "All stairways and steps of more than three risers shall have at least one hand-rail. Stairways and steps which are five feet or more in width or which are open on both sides shall have a hand-rail on each side;" and that the failure of defendant in those respects was the proximate cause of plaintiff's injuries, without any negligence on her part contributing to cause her injuries.

On behalf of defendant it is contended that the evidence admitted on the trial failed to result in any issues of fact in those respects, and that the court erred in denying defendant's motions for nonsuit and a directed verdict. That contention is predicated primarily upon some testimony by plaintiff that her fall occurred while she still had her hand on the rail alongside the first series of seventeen steps. If she was correct in that testimony, and began falling while her hand was still on that rail, then the absence of a rail was not the cause of her injury. However, it appears that plaintiff was severely and painfully injured, and that she had no definite recollection as to whether she had stepped off the lowest step of the stairway above the platform, or as to how she came to fall. On the other hand, the secretary of the defendant corporation testified that he saw her when she was about two and one-half feet away from the hand-rail; that he thought that she took two steps; and that at the moment she stepped down off the edge of the platform, all at once she went to the floor. If that testimony is correct, and plaintiff fell after she was two and one-half feet, or two steps beyond the end of the rail, and as she was stepping off the platform, then it was within the province of the jury to find that the cause of her injury was the failure of defendant to provide hand-rails from the platform to the basement floor, and thereby maintain that place as free from danger to the life and safety of employees and frequenters as that place reasonably permitted. And as there was nothing in the

situation or circumstances that rendered plaintiff guilty of contributory negligence as a matter of law, no error was committed in denying defendant's motions for nonsuit and for a directed verdict.

However, instead of submitting to the jury the issue of whether defendant failed to furnish or maintain that place as required by the provisions of sec. 101.06, Stats., error prejudicial to plaintiff (and which she seeks to have reviewed upon due notice under sec. 274.12) was committed in requiring the jury to pass upon the question of whether defendant was negligent in failing to maintain that place in a reasonably safe condition. The jury found that defendant was not negligent in that respect, but the issue as to defendant's negligence was not involved in this case, which was based wholly upon the defendant's failure to comply with the safe-place statute. By reason of that statute it was not sufficient for the defendant to be free from negligence as at common law. That statute "imposes a duty beyond the duty imposed at common law." *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650; *Washburn v. Skogg,* 204 Wis. 29, 233 N. W. 764, 235 N. W. 437; *Bunce v. Grand & Sixth Bldg. Inc.* 206 Wis. 100, 238 N. W. 867. Because of the error in the form of the question which was submitted, the plaintiff was deprived of the opportunity of having the jury pass upon the simple issue as to whether the defendant failed to comply with the requirements of the safe-place statute, regardless of whether it was negligent in that respect. Because of that error a new trial was necessary, and for that reason the court's order granting a new trial as to all issues excepting those raised by defendant's special plea in bar was proper.

Plaintiff also seeks review of rulings excluding the proposed testimony of the building engineer and a building inspector of the Industrial Commission, based upon their knowledge and experience, as experts, in relation to the rea-

sonably adequate safety devices and safeguards in the construction and maintenance of stairways. The questions called for the opinions of the experts as to whether reasonably adequate safety devices and safeguards had been provided by defendant to render the stairway safe; whether it conformed to the requirements of the Industrial Commission's rules and regulations which had been received in evidence, and what changes in structure would be necessary in order to have the stairway conform to such regulations; and whether defendant had done everything reasonably necessary to protect employees and frequenters as prescribed by statute. Although the questions related somewhat to the ultimate issues to be passed upon by the jury, the solution and explanation of the problems, as to which the expert opinions were sought, necessitated special knowledge and skill in modern architecture and engineering to such extent as to render such opinions on that subject admissible. See *Marsh Wood Products Co. v. Babcock & Wilcox Co.* 207 Wis. 209, 240 N. W. 392, 400, and cases there cited.

As a special plea in bar, defendant alleged that plaintiff had executed a release fully discharging the defendant from all liability. At the conclusion of the evidence both parties moved for a directed verdict in relation to the plea in bar. Thereupon the court considered the issues on that subject as withdrawn from the jury, and said:

"The testimony clearly establishes that the so-called settlement and release was procured by the Hardware Mutual Insurance Company's representative acting on behalf of the insurance company and on behalf of the defendant; that it was procured by misrepresentations as to the true condition of the plaintiff's injuries and further misrepresentations as to the responsibility or liability of the defendant company, and that the amount stated in the release, as consideration, was so grossly inadequate and grossly disproportionate to the amount of actual injury as to amount to a badge of fraud on its face."

The evidence well warrants those findings and conclusions.

The plaintiff was a timid, unmarried woman, sixty-six years of age, with no business or legal experience whatsoever, and without contact with any person versed in such matters until after she had parted with a check for $150, which had been left with her by an adjuster for the insurance carrier when he procured her signature to a release. He succeeded in getting her to sign by high-pressure methods during a siege at her bedside in the hospital, from 7:30 to 9:30 p.m., within seventy-five hours after she had been injured. She was badly shocked and grievously.hurt, her hip was fractured, the pain was excruciating, she was dazed, confused, mortified, and embarrassed. She was unable to make, and did not attempt to make, any inspection or examination of the place. A doctor, hastily summoned, rushed her to the hospital. Opiates and sedatives were administered. She continued to be agonized with pain, and there was such an inflamed condition that it was deemed inadvisable to attempt to reduce the fracture and apply the plaster cast. While she was in an exhausted and distressed condition, packed in sand bags to keep her hip immobile, and racked with pain and under the influence of sedatives and hypnotics, the adjuster, whom she had never known, entered her room without her permission, while she was being visited by a friend and a cousin, both of whom were of her sex, and equally inexperienced in business and legal matters.

He stated that he was a "lawyer," experienced in the law of negligence; that he had seen and inspected the stairway; that he was intimately familiar with the requirements of the law in respect to such structures; that there was "nothing wrong" with the stairway; that it conformed to the law and requirements in every respect; that he had wide experience in the matter of fractures and had inspected the X-ray pictures and the injury was "not serious," "not a socket break;" that recovery would be speedy and complete; that this was indisputably a non-liability case; that consequently

defendant owed nothing but would pay a nominal sum to clear the matter up at once; that there was absolutely no legal liability; that he, the adjuster, must leave town immediately and had little time to give to the matter; that in "non-liability" cases his company was usually willing to "allow something for good will," usually somewhere near half of the probable expense; that recovery would be early and complete; and that the entire expense would not exceed $300. He finally induced plaintiff to sign the release and as consideration left a check for $150. Under the circumstances, and particularly in view of plaintiff's limited experience and mental capacity, and the superior technical knowledge and experience which the adjuster professed to have, the court was warranted in finding that plaintiff, at the time she signed the release, was entitled to rely upon the adjuster's statements as representations of matters of fact and not mere matters of opinion; and also in finding that plaintiff was induced thereby to execute the release. *Jesse v. Tinkham,* 207 Wis. 49, 239 N. W. 455, 457, and cases cited. Even though misrepresentations are in part in relation to matters of law, if they are made by one who has superior means of information and professes a knowledge of the law, and thereby obtains an unconscionable advantage of another, who is ignorant and has not been in a situation to become informed, the injured party is entitled to relief, just as well as if the misrepresentation had been concerning a matter of fact. *Rusch v. Wald,* 202 Wis. 462, 464, 232 N. W. 875; *Ellis v. Gordon,* 202 Wis. 134, 139, 231 N. W. 585.

The adjuster's representations as to plaintiff's physical condition were clearly false. The X-ray plates, which he claimed to have examined, revealed to those who could read them a very serious fracture, which necessitated applying a cast from the toes to the waist line, and confinement in bed for three months. She probably will never be able to walk properly and is permanently disabled.

It may be true that because of information which plaintiff

received from her physician, and her experiences as to her condition before she finally indorsed the check at the request of a hospital employee to pay her hospital bill, she should then have realized that the adjuster's representations as to her physical injuries were false. In that event, she may not have been entitled to rely on those representations when she accepted the benefit of that check. However, the circumstances and legal consequences are otherwise in relation to the adjuster's representations as to defendant's performance of its legal duties in regard to the safety of the stairway, and his positive assertion that there was absolutely no liability on defendant's part. Neither the facts nor the law applicable thereto then warranted such an absolute and unqualified representation. On the contrary, because of the absence of hand-rails on each side of each of the steps below the platform, the stairway clearly did not conform to the Industrial Commission's safety order No. 6103. Consequently, at least in that respect the facts admitted of the conclusion that defendant had failed in the performance of its duties, and that it was legally liable for injuries sustained as the result of that failure. Under the circumstances it could not be truthfully said that there was absolutely no liability on defendant's part. As nothing had occurred to disabuse plaintiff's mind on that subject, up to the time that she parted with the check and thereby became unable to return it or the proceeds thereof, she was then still entitled to rely upon the adjuster's positive representations as to defendant's non-liability. Her inability to restore the amount of that check until it was tendered by her counsel at the commencement of the trial did not defeat her right to repudiate the transaction because of the fraud. *Wilks v. McGovern-Place Oil Co.* 189 Wis. 420, 423, 207 N. W. 692. Consequently, no error was committed in overruling the plea in bar.

*By the Court.*—Orders affirmed.