28 Wis.2d 686 (1965)
BELLART, Respondent,
v.
MARTELL, d/b/a BIG BEND PRECAST COMPANY, Appellant.[*]
Supreme Court of Wisconsin.
September 8, 1965.
November 5, 1965.
*688 For the appellant there were briefs by Grootemaat, Cook & Franke, attorneys, and Robert E. Cook and Francis R. Croak of counsel, all of Milwaukee, and oral argument by Robert E. Cook.
For the respondent there was a brief by Wickham, Borgelt, Skogstad & Powell, attorneys, and Norman C. Skogstad *689 and Richard E. Sommer of counsel, all of Milwaukee, and oral argument by Mr. Sommer and Mr. Norman C. Skogstad.
FAIRCHILD, J.
The safe-place statute, sec. 101.06, Stats., requires every owner of a place of employment or a public building to construct and maintain it so as to render the same as free from danger as the nature of the employment, place of employment, or public building, will reasonably permit. The learned circuit judge instructed the jury that Martell had this duty, under the circumstances of this case, both because the plant was a place of employment and a public building. If the instruction was correct with respect to its being a place of employment, it would be unnecessary to examine its status as a public building.
1. Martell's plant as a place of employment. Sec. 101.01 (1), Stats., provides in part:
"The phrase `place of employment' includes every place . . . where . . . any industry, trade or business is carried on . . . and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit . . . ."
Martell carried on a business at his plant. Thus the first condition was fulfilled. The issue is whether the second one was also.
Sec. 101.01 (4), Stats., provides:
"The term `employe' shall mean and include every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go or work or be at any time in any place of employment."
It is conceded that there had been employees at work in the plant until about two months before the accident, and that there were employees at some time afterward. The record does not suggest that the character or volume of the business changed materially at any time during the entire period. *690 Immediately before, at, and after the time of the accident Mrs. Martell was performing services of the type usually performed by employees, but no one else, other than Mr. and Mrs. Martell, was working there. Another person became employed either in November or December after the accident, or in June, 1960. The testimony is conflicting on this point.
Mrs. Martell testified she assisted her husband in the business, handled the books and billing, ran the tile machine, made mixes, loaded the truck. The business receipts were put into the bank in the name of Big Bend Precast. She made deposits and wrote checks. She did not keep track of the amount of time she spent at work. When the family needed money for living expenses, she would withdraw money for that purpose from the Big Bend account. She had no agreement as to a rate of pay for her work. When asked what remuneration she received, she replied: "I lived there."
Her husband testified as follows:
"Q. Isn't itIsn't it a fact that she was reimbursed for the work that she did in there? A. Dollars and cents-wise?
"Q. Well, how was she reimbursed? A. Three meals a day.
"Q. I see. A. There wasn't much money.
"Q. I understand. She didn't draw a wage then as such from you? A. No."
Presumably there was more money in the Big Bend account than there would have been if Mrs. Martell had not worked. The benefits she received were all of a type which could be categorized as marital support, although the level of support was presumably higher than it could have been if she had not worked in the plant.
It is true that a wife who assists her husband in his business efforts is not necessarily his employee. Defendant's counsel cites authority for the proposition that in the absence of a special contract, services performed by a wife are *691 presumed to be gratuitous.[1] We conclude that the present record does not establish, as a matter of law, that Mrs. Martell was her husband's employee when performing services at the plant.
The safe-place statute protects frequenters in a place of employment, as well as employees. In the present case, the plant had been a place of employment about eight weeks before the accident and became one again either in a few weeks, or, at most, eight months later. The record does not show whether Martell's use of his wife's services was a temporary expedient, with an intention on his part again to employ someone to render the same service, or whether Martell intended for an indefinite future period to get along without any employee. We recognize that the statute defines a place of employment as a place where a person is employed. It seems unreasonable, however, to deem that an established place of employment ceases to be one where it is operated temporarily without the existence of any employment relationship, but without other significant change. Bearing in mind the purpose of the safe-place statute, we consider that it is appropriate in the circumstances of this case to impose upon the employer the burden of proving that the use of his wife's services, in lieu of those of an employee, was not a temporary expedient. Upon this theory, and there being no proof that Mr. Martell intended to operate the plant permanently with only the assistance of his wife, we sustain the instruction given the jury that Martell owed the duties of an owner of a place of employment.
2. Opinion testimony with respect to safety orders. Mr. Edgar Burkhardt testified when called by plaintiff. He was formerly a deputy safety inspector for the industrial commission, *692 but is now retired. He inspected the mixer a few days after the accident. He testified that there was a violation of safety orders of the industrial commission, applicable to a place of employment, secs. 1.21 and 1.24, as they existed in 1959.
In 1959 sec. Ind 1.21 (Wis. Adm. Code (1956)), read:
"PROJECTING PARTS ON SHAFTS. Every projecting part on a revolving shaft such as a collar, clamp, pin, coupling, oiling device, etc., where exposed to contact, (which shall include exposure while oiling machinery in motion), shall be guarded."
Mr. Burkhardt considered that the arms which were attached to the revolving shaft, and to which the mixing blades were in turn attached, constituted projecting parts on a revolving shaft, exposed to contact. He conceded that these projecting parts were not specifically enumerated in the safety order but he indicated that he thought these parts fell within the term "etc." It seems obvious that the enumeration was not intended to be exclusive.
In 1959 sec. Ind 1.24 (Wis. Adm. Code (1956)), read in part:
"REVOLVING, OSCILLATING OR RECIPROCATING PARTS OF ENGINES AND OTHER MACHINES. (1) Cranks or crank discs, crank shafts and connection rods, where exposed to contact, shall be guarded."
Mr. Burkhardt expressed the opinion that the attachment of the arm to the revolving shaft amounted to a crank, exposed to contact, and required to be guarded under sec. 1.24 (1).
Defendant Martell claims that this testimony was improper because it constituted the witness' opinion on a question of law, i.e., the meaning of the safety orders. We have held, however, that expert opinions are admissible when they *693 explain the meaning and practical application of the terms of safety orders and where the expert's special knowledge may be deemed helpful to the jury.[2]
Other expert witnesses testified as to the availability of a guard, to the use of guards on similar mixers at other plants, and that without the guard the machine was not as safe as it reasonably could have been. This testimony was relevant to the issue whether the place of employment was kept as free from danger as the nature of the place of employment will reasonably permit.[3]
We find no abuse of discretion in accepting the testimony of these witnesses as experts.
3. Exposure of stumps to the jury. As a result of the accident Bellart underwent amputation of the right hand two inches above the wrist and amputation of his left leg well above the knee. In testimony relevant to the issue of damages, Bellart described the prosthetic devices he used on each limb. He told of various difficulties which he had experienced and described the manner in which the stump of his left leg must be carefully maneuvered into a position in the device where there is a proper fit.
He also described a shoulder harness worn on the left shoulder and used in controlling the hook on the prosthesis of the right arm. Later, with his shirt off, he demonstrated to the jury the way the shoulder harness, cords, and a wire activate the claw. He then removed the prosthesis from his arm and counsel described it for the record. Defense counsel moved for a mistrial because the bare stump of the arm had been exposed to the jury for two to five minutes. The motion was denied.
*694 On another day Bellart briefly exposed the stump of his left leg before the jury and another motion for mistrial was made and denied.
The total of all the damages found by the jury was $160,000 and medical expenses of $4,955.92 were determined by the court. Defendant concedes that the damage verdict is not excessive and shows no influence by improper considerations. Defendant also concedes that the question of whether parts of the body should be exposed before the jury under similar circumstances ordinarily lies in the sound discretion of the court. He contends, however, that there was an abuse of discretion in this case and that the display served only to inflame and unduly prejudice the jury. He contends also that such prejudice has been reflected in the answers to the liability issues although not apparent in the damage findings.
We do not find an abuse of discretion. Upon this record, the learned circuit judge may reasonably have concluded that a brief view of the stumps would make Bellart's testimony concerning the use and difficulties of the prosthetic devices more meaningful. Moreover, it seems to us improbable that these exhibitions affected any of the findings on liability issues.
4. Comparison of negligence. Defendant points out that defendant was guilty only of an omission whereas plaintiff, knowing that a guard was lacking, negligently allowed his hand to get into the machine. Defendant contends that Bellart's negligence was both active and so high in degree as to be equal to, or greater than defendant's negligence as a matter of law. We find, however, no basis upon which to interfere with the comparison of negligence made by the jury.
By the Court.Judgment affirmed.
*694a The following memorandum was filed January 20, 1966.
PER CURIAM (on motion for rehearing).
The appellant on his motion for rehearing has alerted us that language in the opinion that, ". . . we consider that it is appropriate in the circumstances of this case to impose upon the employer the burden of proving that the use of his wife's services, in lieu of those of an employee, was not a temporary expedient," could be misinterpreted as stating that the burden of proof was shifted to the employer. Such an interpretation was not intended by the court. The phrase properly interpreted means merely that the employer had the burden of going forward with the evidence. The burden of persuasion or proof did not shift.
Motion for rehearing denied without costs.
NOTES
[*] Motion for rehearing denied, without costs, on January 20, 1966.
[1] Estate of Goltz (1931), 205 Wis. 590, 238 N. W. 374; Sprinkle v. Ponder (1951), 233 N. C. 312, 64 S. E. (2d) 171; Smith v. Smith (1961), 255 N. C. 152, 120 S. E. (2d) 575, and 41 C. J. S., Husband and Wife, p. 414, sec. 18.
[2] Allison v. Wm. Doerflinger Co. (1932), 208 Wis. 206, 211, 242 N. W. 558; Bent v. Jonet (1934), 213 Wis. 635, 644, 252 N. W. 290; Candell v. Skaar (1958), 3 Wis. (2d) 544, 551, 89 N. W. (2d) 274.
[3] Allison v. Wm. Doerflinger Co., supra, footnote 2.