BARTHEL and wife, Respondents, v. WISCONSIN ELECTRIC POWER COMPANY and others, Appellants.

*No. 574. Argued June 3, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 863.)

For the appellants there were briefs by *Prosser, Wiedabach, Lane & Quale, S. C.* of Milwaukee, and oral argument by *John E. Feldbruegge* of Milwaukee.

For the respondents there was a brief by *Kasdorf, Henderson, Dall, Lewis & Swietlik,* attorneys, and *K. E. Kilmer* and *David H. Stacy* of counsel, all of Milwaukee, and oral argument by *Mr. Kilmer.*

DAY, J. This is an appeal from an order overruling defendants' demurrers to two counts of the plaintiffs' complaint. The demurrers allege failure to state a cause of action. The question raised by the demurrers is whether or not the electric company's conductors carrying electricity adjacent to the premises where the plaintiff Richard A. Barthel was working, constitute a "place of employment" within the meaning of the safe-place statute.

Appellants, Wisconsin Electric Power Company, The Home Insurance Company, and Midland Insurance Company ("defendants") appeal from that portion of a July 30, 1974, order of the circuit court which overruled their demurrer to the second and fourth causes of action asserted in the complaint of the plaintiff-respondents, Richard A. Barthel and Barbara Barthel, his wife ("plaintiffs"). The second and fourth causes of action

of the complaint allege violations by the defendant Wisconsin Electric Power Company ("power company") of its duties under the safe-place statute, sec. 101.11, Stats. The second cause of action is for Mr. Barthel's injuries, while the fourth cause of action is for damages suffered by Mrs. Barthel as a result of her husband's injuries. The second and fourth causes of action incorporate the factual allegations of the first cause of action, alleging negligence on the part of the power company with respect to the power lines in question.

The complaint alleges certain facts which, for purposes of demurrer, we must assume to be true. On June 13, 1973, Mr. Barthel was lawfully on the premises located at 3364 84th Street, in the city of Milwaukee, and was engaged in the installation of aluminum gable trim upon the home located at that address. Prior to June 13, 1973, it is alleged that the power company carelessly and negligently operated, maintained, controlled and placed immediately adjacent to the northern peak of the home on which Mr. Barthel was working, conductors or lines carrying electricity over or immediately north of these premises. It is further alleged that as a result of such operations by the power company, the plaintiff, Richard Barthel, sustained serious personal injuries. The third cause of action, on behalf of Mrs. Barthel, was a repetition by incorporation of the alleged acts of common-law negligence and failure to conform to the Wisconsin Administrative Code as it applies to power lines. Since the first and third causes of action in the complaint alleging negligence are not challenged by demurrer, they are not considered on this appeal.

The allegation that this constituted a place of employment is set forth in the plaintiffs' complaint:

"Upon information and belief, alleges that Wisconsin Electric Power Company at all times material hereto, was an owner of a place of employment consisting of high voltage and/or high current conductors in, around,

surrounding and crossing the 3300 block of South 84th Street in Milwaukee, Wisconsin, as well as various types of transmission and distribution lines and power plants to generate electricity and transmit same."

The plaintiffs allege that at the time and place in question, the power company failed to maintain a place of employment as safe as the conditions would reasonably permit in violation of the duty of care required by the safe-place statute, sec. 101.11, Stats. They allege that the power company's acts of negligence or its violation of the safe-place statute proximately caused the injuries suffered by the plaintiffs. Mr. Barthel allegedly received severe electrical burns and injuries of a permanent and severe nature and Mrs. Barthel claims she is deprived of her husband's aid, society, comfort, services and consortium and must furnish him with nursing and medical care and attention.

Only the causes of action by both plaintiffs alleging violation of the safe-place statute are considered; they were demurred to on the ground they failed to allege facts sufficient to constitute a cause of action. Plaintiffs moved the trial court to overrule the demurrer, and on July 29, 1974, in a hearing on that motion, the trial court granted the motion and overruled the demurrer. An order was entered to that effect on July 30, 1974; and the defendants appeal therefrom.

The question is whether or not the power company's conductors and power lines at or near the premises where Mr. Barthel was working on the aluminum gable constitute a place of employment.

Sec. 101.11, Stats., defines an employer's duty:

"**101.11 Employer's duty to furnish safe employment and place.** (1) Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and

shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe."

The statute, sec. 101.01 (2) (a), defines "place of employment."[1]

This court has given a broad construction to what constitutes a place of employment. In *Bent v. Jonet* (1934), 213 Wis. 635, 639, 252 N. W. 290, this court said:

"The objective of the statute is to insure safety by the broadest sort of provisions with respect to the kind of places affected."

The statutory definition establishes two elements which must be found to exist at the place which a plaintiff alleges is a place of employment.

"In addition to there being actionable negligence by safe-place statute standards, two elements must be established before a location qualifies as a 'place of employment' under the safe-place statute: Business must be carried on, and a person must be employed on the premises." *Wittka v. Hartnell* (1970), 46 Wis. 2d 374, 380, 175 N. W. 2d 248; and *Cross v. Leuenberger* (1954), 267 Wis. 232, 235, 236, 65 N. W. 2d 35, 66 N. W. 2d 168.

The first element that a business be carried on at the location seems satisfied in that the statute requires only

---

[1] "(a) The phrase 'place of employment' includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit . . . ."

that "any process or operation, directly or indirectly related to any industry, trade or business, is carried on, . . ." sec. 101.01 (2) (a), Stats. The allegations of the complaint that electrical power was carried through power company's conductors and lines at the location constitute the required "process or operation." The second element, that a person be employed on the premises, is not met here; and we conclude that the statute does not apply. It is clear from the complaint that Mr. Barthel was not an employee of the power company.

This court has stated that an employee of an independent contractor doing work upon the premises in question is not an employee within the terms of the safe-place statute but qualifies only as a "frequenter."[2] *Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 445, 253 N. W. 579; *accord, Hrabak v. Madison Gas & Electric Co.* (7th Cir. 1957), 240 Fed. 2d 472, 476. There is no allegation that there were employees of the power company on the "premises" at the time Mr. Barthel suffered injury. In *Bellart v. Martell* (1965), 28 Wis. 2d 686, 137 N. W. 2d 729, 139 N. W. 2d 473, the defendant ran a plant which manufactured cement products. He called the plaintiff, an electrician employed by an electrical firm, to repair a mortar mixer in his plant. The plaintiff was injured while doing so and brought action under the safe-place statute. The question in the case was whether or not the defendant's plant was a place of employment. The court found that business was being actively carried on at the plant, so the first condition was satisfied. As to the second requirement, the court found that several employees had worked at the plant until about two months before the plaintiff suffered

[2] Sec. 101.01 (2) (e), Stats., reads:

"(e) The term 'frequenter' shall mean and include every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

injury and that another was hired some months afterward. At the time of the accident, however, although the volume of defendant's business had apparently remained about the same, only the defendant's wife worked in the plant with her husband and she was not paid. The court said that the record did not show that she was a bona fide employee and she was held not to be such. But the court then held that an established place of employment does not cease to be one because it is temporarily operated without any employment relationship but with no other significant change. *Martell* at page 691. Thus, on that basis, the plant was held to be a place of employment and therefore the safe-place statute applied.

The *Martell Case* points out the importance of the employment relationship. In the present case, Mr. Barthel was not an employee and his presence at the scene cannot alone satisfy the second requirement of the definition.[3]

Plaintiffs in the instant case argue that the presence of power company's employees need only be sporadic or temporary and the fact that the power lines are inspected, maintained and repaired periodically is sufficient to establish the necessary employment relationship. Reliance is placed on the *Martell Case* for the proposition that the presence of employees at the location in question need not be continuous. The principle is not applicable

---

[3] This proposition, that another employer's employee who happens to be on the premises in question (even when actually working) is the only employee needed there to create the necessary employment relationship, which in turn renders the place one of employment, was also rejected in *Voeltzke v. Kenosha Memorial Hospital* (1969), 45 Wis. 2d 271, 280, 172 N. W. 2d 673:

"The fact that employees of other employers, such as the salesmen described in the offer of proof, use the parking lot does not make the hospital an owner of a place of employment. If the extremes of this contention were recognized as the law, a person's home would become a place of employment under the safe-place statute."

to the facts in the instant case. *Martell* spoke explicitly about a very different situation. Its holding is limited to the proposition that an established place of employment does not cease to be one where it is temporarily operated without an employee but with no other significant change. Power company's lines and conductors alleged in the present case to be a place of employment have never been established to be such. The only time the lines and conductors were such was when they were being installed and on the presumably infrequent occasions when they are actually inspected or repaired, which is not comparable to a cement-products plant where the lack of employees being present is a temporary situation. In *Padley v. Lodi* (1940), 233 Wis. 661, 290 N. W. 136, the plaintiff was injured in a fall on a street of the defendant village; she stepped off a curb and stumbled or slipped on a water-main shutoff box protruding from the street. Judgment for plaintiff was granted in the trial court on the theory that the safe-place statute applied. In *Padley*, page 663, this court stated the definition of "place of employment" much as it is in the statute:

"A place of employment originally meant and still does mean a place where active work, either temporary or permanent, is being conducted in connection with a business for profit; where some process or operation related to such industry, trade, or business is carried on; and where any person is directly or indirectly employed by another."

The court then went on to note that the surface of the street at the place of the accident was not being used so as to create a place of employment. Further, the fact that some thirty years previous pipe was laid beneath the surface of the street and a shutoff box installed was also insufficient to render the street or the shutoff box a place of employment. The court said that while operations are actually and actively carried on, the portion of the street

used may be a place of employment. But this was not such a case. There was no place of employment involved in the case and the safe-place statute was held inapplicable; judgment was reversed. *See also: Rausch v. Buisse* (1966), 33 Wis. 2d 154, 163, 146 N. W. 2d 801. The process or operation of water flowing through the pipes beneath the streets of Lodi is, for the purposes that we deal with here, analogous to that of the electricity flowing through the power lines of the power company. Both are on-going, constantly functioning systems. Neither requires continuous attention, but both require occasional inspection and repair. The water system and its shutoff box were found not to be a place of employment. Such is also the case with respect to the power lines in the present case.

Another analogous case is *Frion v. Coren* (1961), 13 Wis. 2d 300, 304, 108 N. W. 2d 563. There the plaintiff was injured on a balcony of her apartment building. This balcony was accessible only from her apartment, but she claimed a cause of action under the safe-place statute alleging that the balcony was a place of employment since the janitor used it to remove and install screens for the tenants. This court rejected that argument, saying the balcony ". . . would be a place of employment only during those periods of time it was being so used."

Plaintiffs also contend that the requisite employment relationship at the accident site can be found in the nature of the electrical lines and conductors as extensions of the power company's business. Plaintiffs claim the lines and conductors are analogous to the sidewalk in front of a department store, *Werner v. Gimbel Brothers* (1959), 8 Wis. 2d 491, 99 N. W. 2d 708, 100 N. W. 2d 920, or to the parking lot adjacent to a town house complex, *Wittka v. Hartnell, supra.* But these cases consider the place of injury to be an integral part of the larger business enterprise and under the continuous supervision and control of the operators of the business. The side-

walk and parking lot were considered premises appurtenant to the regular place of employment, thereby falling within the statutory definition. Sec. 101.01 (2) (a), Stats. These cases are not analogous. Electrical lines may be miles from the generating plant and are not appurtenant to it in the same sense that a parking lot or a sidewalk may be appurtenant to a place of employment.

In *Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 290 N. W. 177, the plaintiff was an employee of a subcontractor involved in the construction of a building for defendant on defendant's property. The plaintiff was engaged in erecting structural steel and received injury by electrical shock when certain equipment he was working with came in contact with one of the wires of a power line. He brought action against the defendant Seaman Body Corporation and the electric company under theories of both negligence and safe-place statute violation. The trial court directed a verdict for the electric company and that action was confirmed by this court on appeal. This court held the safe-place statute did not apply to the electric company.

In the case of *La Duke v. Northern States Power Co.* (1950), 256 Wis. 286, 41 N. W. 2d 274, the plaintiff was an electrician employed by another electric company, not the defendant, and was working at the Lakeside Aluminum Company plant. Defendant maintained on the property of the aluminum company a bank of three transformers suspended above the ground. Plaintiff was engaged in certain electrical work for the aluminum company around these transformers, came in contact with the iron upon which they rested and was injured by a charge of the electrical current. Plaintiff sued the power company under the safe-place statute and under a common-law negligence theory. The trial court dismissed both actions at the close of the testimony; this court affirmed the dismissal of the safe-place action on the ground that the defendant's transformers and poles did

not constitute a place of employment. This court said in *La Duke,* page 289:

"The place of plaintiff's employment was the Aluminum Company and the duty to maintain it according to the statutory standards rested upon the Aluminum Company."

In both the *La Duke* and *Criswell Cases,* the power companies were found not to be operating a place of employment and we conclude that the defendant in the instant case also cannot be found to be operating a place of employment at its conductors and lines at the point where the plaintiff was injured.

*By the Court.*—Order reversed, without leave to replead.