Walter UEBELE, d/b/a Burlington Garden Center, and the Travelers Indemnity Company, Plaintiffs-Respondents,

.v.

OEHMSEN PLASTIC GREENHOUSE MANUFACTURING, INC., Defendant-Appellant,

RAY COBB, Defendant-Respondent.

Court of Appeals

*No. 84–1196. Submitted on briefs June 4, 1985.—
Decided July 15, 1985.*
(Also reported in 373 N.W.2d 456.)

---

For the defendant-appellant the cause was submitted on the briefs of *Conrad H. Johnson* of Madison, Wisconsin.

For plaintiff-respondent Travelers Indemnity Company and plaintiff-respondent Walter Uebele the cause was submitted on the briefs of *Riordan, Crivello, Carlson, Mentkowski & Henderson,* with *Michael J. Hogan* of counsel, of Milwaukee, and *Kirt J.E. Ludwig* of counsel, of Burlington, Wisconsin.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   Oehmsen Plastic Greenhouse Manufacturers, Inc., appeals from a judgment on a jury verdict finding it 100% negligent in the design and manufacture of a greenhouse purchased by Walter

Uebele. Oehmsen raises two issues on appeal: (1) whether the trial court erred in ruling that the provisions of the Wisconsin Building Code apply to manufacturers of prefabricated greenhouses, and (2) whether the trial court misused its discretion by excluding expert testimony that the Department of Industry, Labor and Human Relations (DLHR) has, in the past, not applied the building code to prefabricated greenhouses.[1] Because the building code unambiguously applies to a manufacturer of prefabricated greenhouses and because the question whether DILHR applied the code against prefabricated greenhouses is irrelevant, we affirm.

Uebele purchased four prefabricated greenhouses from one of Oehmsen's distributors. Uebele understood that Oehmsen was not responsible for erecting the structures. Each greenhouse was packaged and shipped as a kit which included all the parts and plans for construction. Oehmsen sent the kit to Uebele in September, 1977. Uebele contracted with a third party to erect the greenhouses. The greenhouses were so designed that they could be joined in tandem to create one large greenhouse with four sectional arched roofs. The vertical structure consisted of aluminum I-beam columns which supported the roof structure. When erected, the entire framework was covered with a double layer of polyethylene sheeting. The roof of the greenhouse was pressurized so it would remain rigid.

At 8:00 a.m. on January 13, 1978, Uebele entered the greenhouse and noticed that approximately four inches of snow had accumulated on the roof. He turned the thermostat above seventy degrees in an effort to melt some of the snow. He returned at 10:00 a.m. and observed no appreciable results. To quicken the thawing process, he disconnected the insulation fans that produced the air between the two layers of plastic. He in-

---

[1] Oehmsen originally made a third claim of error; namely, that the trial court improperly refused to give a *falsus in uno* instruction. However, Oehmsen waived this assignment by reply letter.

tended that the warmth from the interior area would melt the snow, which would then run into the gutters. When he returned at noon, the snow had begun melting, but still remained level. When he returned to check conditions at 2:00 p.m., three of the four units had collapsed.

The case was tried to a jury, which found Oehmsen to be the only causally negligent party. The trial court denied Oehmsen's motions after verdict and entered judgment against it for $40,331.68. Oehmsen appeals.

Oehmsen first contends that the Wisconsin Building Code does not apply to manufacturers of prefabricated greenhouses. He argues that the code applies only to owners. He argues that since the term "manufacturer" is not used in the code, the code is meant to apply only to the owner, Uebele, and not the manufacturer, Oehmsen. We are left unconvinced.

We interpret administrative regulations in the same manner as we interpret statutes. *Law Enforcement Standards Board v. Village of Lyndon Station*, 101 Wis. 2d 472, 489, 305 N.W.2d 89, 97 (1981) ; *State v. Joerns Furniture Co.*, 114 Wis. 2d 324, 329, 338 N.W.2d 331, 333 (Ct. App. 1983). The purpose of interpretation is to determine the intent of the agency that adopted the regulation. *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 425, 312 N.W.2d 37, 42 (1981). We will apply statutory construction to agency rules only if the rule or rules are ambiguous. *See Joerns Furniture*, 114 Wis. 2d at 329, 338 N.W.2d at 333. As with a statute, a regulation is ambiguous if well-informed individuals could understand the language under examination in different ways. *Id.*

The express purpose and scope of the building code, Wis. Admin. Code, chs. ILHR 50–64, is to protect the health and safety of the public by establishing minimum standards for the design, construction, and structural

strength of all public buildings. *See* secs. ILHR 50.01 and 50.02. Section ILHR 50.03 provides that the code applies to all new public buildings, except those specifically exempted by sec. ILHR 50.04. Every new building must be designed in compliance with the code. Sec. ILHR 50.07.

Wisconsin Admin. Code, sec. ILHR 50.11 provides: "No owner shall construct . . . or permit any building or structure to be constructed . . . except in compliance with the provisions of ss. ILHR 50.07, 50.08, 50.09, 50.10 and 50.12." The note to sec. ILHR 50.11 refers to sec. 101.01(2), Stats., for the definition of the term "owner." Section 101.01(2)(e) defines an "owner" to include every corporation that prepares plans for the construction of any public building.

As with statutes, we must give the words of administrative regulations their ordinary and accepted meanings. By referring to sec. 101.01(2), Stats., sec. ILHR 50.11 unambiguously provides that a corporation that prepares plans for the construction of any public building is an "owner" subject to the building code.

It is undisputed that the greenhouse in question is a public building and that Oehmsen was the manufacturer who designed it and prepared its plans for construction. The intention of the agency, in view of the expressly stated purpose and scope of the code, is quite clear. The person or entity responsible for the plans for construction of a public building, however accomplished, is included as an owner. As argued by Uebele:

The manufacturer of a prefabricated building participates in the construction of the building by creating the design of the structure, choosing and manufacturing the proper component parts, and directing, by way of the plans, how those parts are to be assembled. The manufacturer stands in the shoes of the architect and builder in a more traditional building operation. It sells

more than just a bundle of parts—it sells its competence and knowledge of safe, efficient and legal design.

The salutary and clearly expressed intention of the building code ought not be frustrated by the misapplied genius of modern industrial manufacturing and marketing techniques. In view of the uncontroverted facts, we conclude that under Wis. Admin. Code, ch. ILHR 50, Oehmsen is an owner.

Next Oehmsen contends that the trial court misused its discretion by excluding expert testimony that DILHR did not apply the minimum code requirement, fifteen pounds stress per square inch, to prefabricated greenhouses. The trial court ruled that the testimony was irrelevant because the applicability of the code to Oehmsen was a question of law. The issue before us is what significance an alleged practice of nonenforcement by DILHR may have to the meaning of an administrative regulation.

Oehmsen argues that the proffered evidence would help to explain the meaning and practical application of the building code. To support its claim of relevancy, Oehmsen cites *Bellart v. Martell,* 28 Wis. 2d 686, 692–93, 137 N.W.2d 729, 732 (1965); *Candell v. Skaar,* 3 Wis. 2d 544, 551–52, 89 N.W.2d 274, 278 (1958); *Bent v. Jonet,* 213 Wis. 635, 644–45, 252 N.W. 290, 293 (1934); and *Allison v. Wm. Doerflinger Co.,* 208 Wis. 206, 211, 242 N.W. 558, 560 (1932).

A review of these cases reveals that in not one instance was expert testimony admitted for the purposes of determining whether or not the particular code applied. Rather, in each case, testimony was elicited for the purpose of determining whether the structure in question conformed to the code. To adopt the language of *International Harvester Co. v. Town of Ellery,* 285 N.Y.S.2d 104, 106 (App. Div. 1967):

[C]ustom, usage and practice may not waive, or in effect avoid, a mandatory statute which is clear and unambiguous on its face. Custom, usage and practice may be considered at times to show the construction that parties have placed upon ambiguous and unclear laws or agreements, but the rule does not apply to this case. [Citations omitted.]

We conclude that the trial court did not misuse its discretion by ruling that the testimony was irrelevant and excluding it. The judgment is affirmed.

*By the Court.*—Judgment affirmed.